SICHTERMAN *v.* KENT STORAGE CO.

1. MASTER AND SERVANT — WORKMEN'S COMPENSATION ACT—RE-
   QUIREMENTS OF ACT.
   To justify an award under the workmen's compensation
   act, the requirements that the accident arise out of and
   in the course of the employment must both be met.

2. SAME—ACCIDENT—ARISING "OUT OF EMPLOYMENT."
   Where a traveling salesman, covering his territory by
   automobile, while on his way to his home city at night,
   got out of his automobile for the purpose of rendering
   assistance to another traveler who had met with an acci-
   dent, and while on the highway was struck by another
   automobile and injured, the accident did not arise out of
   the employment, and an award of compensation therefor
   is not justifiable under the workmen's compensation act.

Certiorari to Industrial Accident Board. Submitted
October 6, 1921. (Docket No. 40.) Decided Febru-
ary 8, 1922.

Gertrude Sichterman presented her claim for com-
pensation against the Kent Storage Company for the
accidental death of her husband in defendant's em-
ploy. From an order awarding compensation, de-
fendant and the Michigan Employers Casualty Com-
pany, insurer, bring certiorari. Reversed, and order
vacated.

*Brown & Kelley,* for appellants.

*Martin H. Carmody,* for appellee.

Harry Sichterman was a traveling salesman in the
employ of defendant Kent Storage Company. His
territory, which he covered once a week, surrounded

On injuries arising out of and in the course of the employment
in general, see notes in. L. R. A. 1916A, 40, 232; L. R. A. 1917D,
114, L. R. A. 1918F, 896.

Grand Rapids where he lived and where defendant's place of business was located. He made his territory by automobile, leaving Grand Rapids in the morning and returning at night. Either at night or the following morning he turned in his orders to the company. On November 10, 1920, he made his usual trip for that day, winding up at Freeport. The usually traveled road from that town to Grand Rapids is known as the "Cascade road" and was the one taken by Mr. Sichterman. About two miles from Grand Rapids and after it had grown dark he came across a peddler with his wagon at the side of the road. The peddler's wagon had been struck by an automobile about an hour before. Mr. Sichterman drove his car about 25 feet beyond where the peddler was, getting it to the side of the road and stopped, got out of the machine and walked back in the road to where the peddler was and had just asked him if there was anything he could do for him when he was struck by an automobile and so seriously injured that he shortly after died, leaving a widow, the plaintiff, and a son, Robert, only four years old. The defense to the claim for compensation is that the accident did not arise out of and was not received in the course of decedent's employment.

FELLOWS, C. J. (*after stating the facts*). This State like many of our sister States has followed the English act in providing that compensation shall be paid in industrial accidents where the accident arises out of and in the course of the employment. The English courts and the courts of this country with uniformity have agreed that both requirements must be met to justify an award. Both requirements are indicative of the underlying thought that compensation is to be awarded when and where the accident occurs in the service of the master and by reason thereof. In an

exhaustive note found in L. R. A. 1916A, 23, following our case of *Rayner* v. *Sligh Furniture Co.*, 180 Mich. 168 (Ann. Cas. 1916A, 386), the subject of workmen's compensation acts is fully treated. At page 41 the editorial writer lays down the general principle:

"It may be stated generally that the phrase 'out of and in the course of the employment' embraces only those accidents which happen to a servant while he is engaged in the discharge of some function or duty which he is authorized to undertake, and which is calculated to further, directly or indirectly, the master's business."

The courts recognize the general principles which control but encounter many difficulties in their application, in determining whether the conditions justifying compensation have been met. In considering the case before us we shall first consider the authorities from other jurisdictions, reserving the consideration of our own cases until the last.

The case of *Robinson* v. *State*, 93 Conn. 49 (104 Atl. 491), supports plaintiff's contention. The court, however, cites no authorities to sustain its conclusion and indulges in no reasoning in support of its holding. The English case of *Corlett* v. *Railway Co.*, 120 L. T. 236, and the opinion of the court of appeals of Indiana, *In re Raynes*, 66 Ind. App. 321 (118 N. E. 387), also have that tendency, although the English case is not fully in accord with *Warren* v. *Hedley's Collieries Co.*, W. C. & Ins. Cas. (1913) 172, and in the Indiana case the employee had gotten out of the taxicab in which he was riding to allow the driver to get some gasoline, an incident of the trip.

In *London & Edinburgh Shipping Co.* v. *Brown*, 42 Sc. L. R. 357; *Dragovich* v. *Iroquois Iron Co.*, 269 Ill. 478 (109 N. E. 999); and *General Accident, etc., Co.* v. *Evans* (Tex.), 201 S. W. 705, liability was sustained

where the accident occurred in attempting to rescue a fellow workman from a perilous position, the Illinois court saying:

"Under these authorities it is clear that it is the duty of an employer to save the lives of his employees, if possible, when they are in danger while in his employment, and therefore it is the duty of a workman in his employ, when occasion presents itself, to do what he can to save the lives of his fellow-employees when all are at the time working in the line of their employment. Any other rule of law would be not only inhuman but unreasonable and uneconomical, and would, in the end, result in financial loss to employers on account of injuries to their employees. From every point of view it was the duty of deceased, as a fellow-employee, in the line of his duty to his employer, to attempt to save the life of his fellow-employee under the circumstances here shown."

The Texas court, treating the question as a new one to that jurisdiction, said:

"The question has not been passed upon by any appellate court of this State, so far as we are aware, and in cases in which the question arose in other States the decisions of the courts are at some variance. In some of them it was held that a workman, who goes to the rescue of his master or another workman, and is thereby injured, is not entitled to compensation. But courts of recognized ability have, on the contrary, held that it is the duty of a workman, when the necessity arises, to do what he can to save the life of his fellow employees, when they are at the time working in the line or course of their employment."

The court of appeals of New York went a step further and in *Waters* v. *Taylor Co.*, 218 N. Y. 248 (112 N. E. 727, L. R. A. 1917A, 347), held that there was liability under the New York act where an employee went to the rescue of an employee of another contractor engaged in a common enterprise, and held that liability was not defeated though Waters was

"technically" working for another employer. But in concluding the opinion, it was said:

"Of course what we thus say is to be read in the light of the facts presented on this appeal. There is no trouble in outlining a case where an employee, even with the laudable purpose of helping another, might go so far from his employment and become so thoroughly disconnected from the service of his employer that it would be entirely unreasonable to say that injuries suffered by him arose out of and in the course of his employment. It is sufficient to say that we do not regard the case now presented to us as being such an one as we have suggested."

That the New York court had gone further in the *Waters Case* than other courts had gone was recognized by that court in *Di Salvio* v. *Menihan Co.*, 225 N. Y. 123 (121 N. E. 766), where after reviewing cases from other jurisdictions it said, referring to the *Waters Case*:

"And this court perhaps went farther than any of these cases in extending the benefits of a compensation act."

In the *Di Salvio Case* the workman wished to say good-by to a fellow workman before he went to the front. In doing so he crossed the room and there received the injuries for which compensation was asked. Both New York cases were written by Justice Hiscock. In the *Di Salvio Case* he said, speaking for the court, after considering the *Waters Case* and cases from other jurisdictions:

"In each of these cases an award was sustained because the court was able fairly to say that between the work for which the employee was engaged and the disputed act which led to the accident there was either naturally or as the result of some act of the employer or of custom a real relationship which brought the accident within the range of employment, and, therefore, it could be said to have arisen out of and in the course of the employment.

"But in the present case we search in vain for any such feature or relationship. There was no connection between the employment for which claimant was engaged, of marking soles, and his trip across the shop to say good-by to a fellow-employee. This act did not enable him either directly or indirectly, in any tangible sense, the better to perform his work, discharge his duties or carry forward the interests of his employer. It was not a natural incident to the work for which he was hired. It did not grow out of any emergency where he was justified in taking an unusual step to protect his employer's interests. It was simply and solely the expression of a private desire and the consummation of a personal purpose. However natural and even commendable his act may have been it was neither beneficial to his employer nor to himself in the way of completing and performing his work."

An English case frequently cited both by the courts of England and of this country is *Reed* v. *Railway Co.*, 99 L. T. 781 (also found reported in 78 L. J. [N. S.] 31), decided by the house of lords in 1908. The workman, an engineer, left his engine when it was standing at rest to get a book from a fellow employee and was injured so seriously that he died. It was held that the accident did not arise out of and in the course of the employment.

In *Smith* v. *Railway*, 79 L. T. 633, a ticket collector collected the tickets from a certain train but had not completed his day's work. He got on the foot-board to speak to a girl he knew and was injured. It was held that the accident did not arise out of the employment.

In *Murray* v. *Allan Bros. & Co.*, W. C. & Ins. Cas. (1913), 193, the employee was injured while watching laborers at work repairing a vessel. He was returning by the shortest way to his place of employment. It was held that the accident did not arise out of the employment.

217 Mich.—24.

The supreme court of Illinois in *Fairbank Co.* v. *Industrial Commission*, 285 Ill. 11 (120 N. E. 457), has this to say:

"The workmen's compensation act is designed to protect workmen and compensate them for injuries received while performing any duty necessary to be performed in the course of their employment or incident to it. It was not intended by this act that the employer who comes within the provisions of the act shall be the insurer of the safety of his employee at all times during the period of the employment. The employer is liable for compensation only for an injury which occurs to the employee while performing some act for the employer in the course of his employment or incident to it. * * *

"An injury occurs in the course of the employment, within the meaning of the workmen's compensation act, when it occurs within the period of the employment at a place where the employee may reasonably be and while he is reasonably fulfilling the duties of his employment or is engaged in doing something incidental to it."

In *O'Toole's Case*, 229 Mass. 165 (118 N. E. 303), the decedent, a city employee, was engaged in spreading cracked stone on the roads. A steam roller was used by the city in the work. Deceased went upon the roller at the invitation of the engineer for personal conversation. While there he was injured. In denying liability, the court said:

"There are cases which hold that an employee is protected by the workmen's compensation act, although not at the time actually engaged in the work for which he was hired. If the employee is injured in going to or returning from his work upon the master's premises, or on premises available for the purpose, or if during intervals of leisure which occur in the course of his employment he is injured, he may still be within the scope of his employment and entitled to the benefits of the act. *Sundine's Case*, 218 Mass. 1 (105 N. E. 433); *Blovelt* v. *Sawyer*, 6 W. C. C. 16. But the principle of these cases is not applic-

able where the servant leaves the sphere of his employment for some purpose of his own entirely disconnected with and not in any way incidental to the employment."

The same court in *McNicol's Case*, 215 Mass. 497 (102 N. E. 697, L. R. A. 1916A, 306), had this to say:

"It is sufficient to say that an injury is received 'in the course of' the employment when it comes while the workman is doing the duty which he is employed to perform. It 'arises out of' the employment, when there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury. Under this test, if the injury can be seen to have followed as a natural incident of the work and to have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure occasioned by the nature of the employment, then it arises 'out of' the employment. But it excludes an injury, which cannot fairly be traced to the employment as a contributing proximate cause and which comes from a hazard to which the workman would have been equally exposed apart from the employment. The causative danger must be peculiar to the work and not common to the neighborhood. It must be incidental to the character of the business and not independent of the relation of master and servant. It need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence."

This court has recognized the principle of this case as we shall presently see.

Turning now to our own cases we find that the precise state of facts here involved has not been before the court although we are persuaded that our former opinions are by analogy controlling. In the recent case of *Sebo* v. *Libby, McNeil & Libby*, 216 Mich. 351, the employee was a gardener; he attempted to stop a

runaway team which was hauling milk consigned to the employer and received injuries resulting in his death. We held that his act was one to prevent loss to the employer and was in the furtherance of the employer's business and sustained liability. But in *Spooner* v. *Detroit Saturday Night Co.*, 187 Mich 125 (L. R. A. 1916A, 17), where the employee as a friendly act took persons up on an elevator he was not employed to run and while so doing was injured, this court held the master was not liable. Mr. Justice STONE, who wrote for the court, there said:

"At the time of the injury we think that he was engaged in an act outside of, and not in the course of, his employment, and the injuries he received and which caused his death did not arise out of and in the course of his employment. The elevator shaft was in pitch darkness, by the undisputed evidence, and in using it he not only risked his own life, but that of the men he took upon the elevator with him. Had he remained in the place where his duties called him and attended to those duties, he would not have been injured, so far as this record shows. The material question is not what he had done at times, for his own convenience or otherwise, while in the employ of Winn & Hammond Company, but the pertinent question is: What was he employed to do upon this night? Manifestly, to run and care for the engine and dynamo. This injury occurred while he was away from his work, and while he was a voluntary visitor to the employees of the appellant, and the act was for his own pleasure or satisfaction."

He then considers a Vermont case and says:

"We think the case readily distinguishable from the instant case. In fact it might be said the plaintiff there was in the performance of and carrying on the very work for which he was employed, to wit: He was assisting his foreman, who undoubtedly represented the master. In the instant case Spooner was rendering no service which was either accepted by or known to his superior, but was engaged in a voluntary, friend-

ly act entirely outside the scope of his employment upon the night in question."

In *Carnahan* v. *Mailometer Co.*, 201 Mich. 153, the employee by direction of the shipping clerk delivered a heavy case of books to the home of one of the stockholders.   He delivered it with safety to himself.   At the request of the maid, and prompted by chivalrous motives, he carried the books upstairs. This extra strain produced the injury.   After considering whether the delivery of the books was labor in the master's service, Mr. Justice STEERE, speaking for the court, said:

"But passing these questions, and even conceding that in rendering this casual service, as directed, to a stockholder of the corporation during the noon hour, plaintiff was in the usual course of his employment, because obeying an order emanating from the manager under whom he was employed, his own testimony shows that he had executed the order as given and fully performed the service directed before the accident occurred.   Neither the nature of his employment nor the special order given him by the shipping clerk can be said to contemplate that after he had succeeded in delivering this heavy box, weighing 140 pounds and containing 100 books, as he estimated, at Mr. Hunt's residence, he would then, at the unreasonable request of some woman whom he hated to refuse, undertake to carry it on his back up a winding stairs to the second floor—an undertaking on which he 'wouldn't take a chance even around the factory' with which he was employed.   There is no competent evidence in the case to support the finding that an injury resulting from such an undertaking arose out of and in the course of his employment."

These three cases we think clearly show the line of demarcation.   In the *Sebo Case* the act was one in the master's interest, for his benefit and in furtherance of his business, and liability was sustained.   In the *Spooner Case* the act was a friendly act to a stranger, not in furtherance of the master's business;

in the *Carnahan Case* the act was an act of chivalry not in furtherance of the master's business; in both these cases the act which caused the injury did not arise out of the employment and liability was denied. That this court has constantly kept in mind the provisions of the statute requiring that the accident must arise out of the employment will be demonstrated by an examination of our own authorities, to a few of which we shall refer. In *Clark* v. *Clark*, 189 Mich. 652, the claimant was injured by a missile thrown by a party attacking his brother for whom he was at work. Mr. Justice Bird, speaking for the court, said:

"It may have been commendable in him to volunteer to assist his brother against such great odds, but that does not satisfactorily answer the question what connection his acts had with his employment. He was not called upon to protect his master's property, as on the previous day. He was not asked to assist his master in the fight on the second day. His action was purely a voluntary one, and it seems to us no different than as though he had discovered the same men fighting with his brother a week afterward 10 blocks away, or as though claimant had observed a fight going on across the street and had gone there to get a better view, and while there had been hit by a flying missile and injured. Had claimant remained at his work he would not have been injured. His presence at the place of fighting was in pursuance of no demand of his employment."

In *Marshall* v. *Baker-Vawter Co.*, 206 Mich. 466, the plaintiff was foreman of the composing room and was shot by the janitor. The board found that the shot was fired through personal spite and denied liability. We affirmed the award because of the finding of the board on the disputed question of fact but recognized the doctrine of *McNicol's Case, supra*.

In *Tarpper* v. *Weston-Mott Co.*, 200 Mich. 275 (L. R. A. 1918E, 507), we held that where the injury resulted from "larking" as our English brethren term

it (*Fitzgerald* v. *Clarke & Son*, 1 B. W. C. C. 197; *Federal Rubber Manfg. Co.* v. *Havolic*, 162 Wis. 341 [156 N. W. 143, L. R. A. 1916D, 968]) there could be no recovery.   The injury may occur when the employee is at work for the master and be produced by a fellow-workman but it does not arise out of the employment, and as we there said—

"That the injury suffered by the employee must arise out of the employment as well as in the course of the employment is well settled by our own decisions."

The following cases are of interest: *Bayer* v. *Bayer*, 191 Mich. 423; *Bischoff* v. *Foundry Co.*, 190 Mich. 229; *Kennelly* v. *Lumber Co.*, 190 Mich. 628; *Borck* v. *Simon J. Murphy Co.*, 205 Mich. 472; *Buvia* v. *Oscar Daniels Co.*, 203 Mich. 73 (7 A. L. R. 1301); *Guastelo* v. *Railroad Co.*, 194 Mich. 382 (L. R. A. 1917D, 69); *Draper* v. *Regents of University*, 195 Mich. 449; *Mitchinson* v. *Day Bros.*, 6 B. W. C. C. 190; *Davies* v. *Crown Perfumery Co.*, 6 B. W. C. C. 649; *Collins* v. *Collins*, 2 Ir. Rep. (1907) 104; *Aitken* v. *Finlayson, Bousfield & Co.*, 7 B. W. C. C. 918; *State* v. *District Court*, 141 Minn. 61 (169 N. W. 274); *Erickson* v. *Railway Co.*, 141 Minn. 166 (169 N. W. 532); *State* v. *District Court*, 141 Minn. 348 (170 N. W. 218); note to *Spooner Case*, 9 N. C. C. A. 647.

This unfortunate accident occurred when the deceased was performing an act of humanity entirely dissociated from the master's work.   It did not arise out of the employment.

The award must be vacated.

WIEST, STONE, CLARK, BIRD, SHARPE, MOORE, and STEERE, JJ., concurred.