The Lennon Company, Inc., Plaintiff in Error,

*v.*

Charles Ridge, Defendant in Error.

412 S.W.2d 638.

(*Knoxville,* September Term, 1966.)

Opinion filed January 6, 1967.

PAUL CAMPBELL, JR., of counsel, CAMPBELL & CAMPBELL, Chattanooga, for plaintiff in error.

ARVIN H. REINGOLD, Chattanooga, for defendant in error.

MR. SPECIAL JUSTICE WILLIAM J. HARBISON delivered the opinion of the Court.

In this case, the Court is asked, for the first time insofar as we are aware, to pass upon the question of the extent to which the well recognized "rescue" doctrine, familiar in the field of tort law, has application in the field of workmen's compensation insurance.

It is necessary at the outset to define precisely the case that is before the Court. There is no dispute as to the facts. Claimant below, Charles A. Ridge, was employed as a job foreman for The Lennon Company, Inc., which was engaged in sheet metal work. The Lennon Company, Inc. was performing a contract on premises of the Combustion Engineering Company, and at the time of the incident which is the subject of the suit, claimant was standing upon a flat car directing the unloading of some equipment.

At the same time, and on the same date, January 28, 1964, Sam Raider Company, Inc., a plumbing contractor, was performing other work on the same premises. Its work was let by separate contract, however, and there was no relationship, contractual or otherwise, between The Lennon Company, Inc. and Sam Raider Company, Inc. insofar as the record discloses, except that employees of the two companies worked in proximity to each other.

An employee of Sam Raider Company, Inc., was killed when the walls of a ditch in which he was working collapsed upon him. Claimant, hearing the disturbance, got down off the flat car where he was working, which was some sixty feet from where the Raider employee was injured, and ran to the scene of the injury. Claimant himself sustained injuries in the course of undertaking to assist or rescue the Raider employee. It is for these injuries that claimant has sued The Lennon Company, Inc., his employer. Claimant also sued Sam Raider Company,

Inc., in the trial court claiming that in addition to being entitled to workmen's compensation benefits from his own employer, he was also entitled to them from the Sam Raider Company, Inc. The trial judge found the issues against the claimant on that point, however, and held that he was not an employee of Sam Raider Company, Inc. No motion for a new trial was filed by claimant and no appeal taken regarding this holding. The question of liability of Sam Raider Company, Inc. is, therefore not before us. The trial judge allowed compensation benefits against The Lennon Company, Inc., and it has appealed.

From the foregoing statement of facts, it is clear that the question before the Court is a somewhat narrow one. The rescue involved here was an attempt to assist a person who was not a fellow employee of the claimant, nor was there any property of the employer involved in the rescue. So far as the record before us discloses, there was no pecuniary or other interest of The Lennon Company, Inc., involved, and The Lennon Company, Inc., was in no way legally responsible for the dangerous condition which resulted in the rescue effort by claimant.

The question before the Court, then, is whether or not an employer is liable for workmen's compensation benefits to an employee who is injured in an attempt to rescue a stranger, under circumstances in which the employer has no pecuniary or proprietary interest in the rescue as such and no responsibility for creating the danger out of which the rescue attempt arose. We are not called upon to decide whether the act of the injured employee was or was not laudable in character, whether it was or was not foreseeable in the sense that the word ''foreseeable'' is used in the law of torts in negligence cases, or to decide questions of ''proximate cause'' as used in the field of

tort law. The question is simply whether or not the injury to the employee can fairly be said to have arisen out of and to have occurred in the course of his employment with his employer. Questions of foreseeability and proximate cause may be of assistance only insofar as they shed light upon the incidents of the contract of employment and upon the question of whether or not the injury was work-related within the meaning of the Workmen's Compensation Law of Tennessee.

■ The "rescue" doctrine is familiar in negligence cases. A wrongdoer who negligently imperils the person or property of another is held to foresee the coming of the rescuer, and injuries sustained by the rescuer are said to be within the scope of the risk created by the original wrongdoer's negligence, and are said to be within the chain of proximate causation, unless they are so reckless or unusual as to be beyond the scope of reasonable foreseeability.

Probably the classic formulation of the rescue doctrine is found in the language of Justice Benjamin Cardozo, while a member of the New York Court of Appeals:

Danger invites rescue. The cry of distress is the summons to relief. The law does not ignore these reactions of the mind in tracing conduct to its consequences. It recognizes them as normal. It places their effects within the range of the natural and probable. The wrong that imperils life is a wrong to the imperiled victim; it is a wrong also to his rescuer. *Wagner v. International Railway Co.*, 232 N.Y. 176, 133 N.E. 437, 19 A.L.R. 1 (1921).

This rule has been applied in Tennessee, as in most states. The Tennessee Court of Appeals stated it as follows:

When one person is exposed to danger through the negligence of another, the latter will be liable in damages to a third person who is injured in a reasonable effort to rescue the person who is exposed to the peril. *Williams v. Town of Morristown,* 32 Tenn. App. 274, 292, 222 S.W.2d 607 (1949).

The Tennessee courts, like those of many states, have recognized that there are some limits to the rescue doctrine, and if the conduct of the rescuer is so rash or foolhardy as to be beyond the realm of reasonable foreseeability, then liability may not follow. *Chattanooga Light & Power Co. v. Hodges,* 109 Tenn. 331, 70 S.W. 616, 60 L.R.A. 459 (1902).

■ In the field of workmen's compensation insurance, of course, different concepts are involved. Liability is imposed upon the employer without regard to the fault of either party, except in cases where the employee may be guilty of willful misconduct, intentional self-inflicted injury, intoxication, or willful failure or refusal to use a safety appliance or to perform a duty required by law. T.C.A. sec. 50-910. No such questions are presented in the record before the Court.

■ The Tennessee Workmen's Compensation Law, which is the exclusive remedy of an employee, "on account of personal injury or death by accident" (T.C.A. sec. 50-908), contains the following definition:

"Injury" and "personal injury" shall mean any injury by accident arising out of and in the course of employment * * *. T.C.A. sec. 50-902(d).

There has been no previous decision in this State, insofar as we are aware, on the question of whether an employer and his workmen's compensation insurer would

be liable to an employee injured in rescuing a third person under circumstances such as those outlined above. The question has arisen in a number of other states, most of which have statutes similar to the Tennessee Workmen's Compensation Law, and there is a substantial split of authority among other jurisdictions on this question.

One of the leading cases allowing workmen's compensation benefits in a situation which was factually quite similar to that involved here, was *Waters v. William J. Taylor Co.,* 218 N.Y. 248, 112 N.E. 727, L.R.A. 1917A, 347 (1916). There an employee of a contractor was injured while undertaking to rescue an employee of another contractor who was caught in a cave-in. The person who was the subject of the rescue effort was seriously injured and later died. The New York Court of Appeals made the following statement, which has been frequently quoted by courts allowing workmen's compensation benefits in such situations:

There is no question that Waters' attempt to rescue his fellow workman immediately led to his own injuries, and therefore the only debatable phase of the inquiry must be whether his general employment included and required or authorized the attempt to rescue from a sudden peril which threatened the life of a fellow laborer working only a few feet away on the same general undertaking, although for a different employer. It seems to us that this act should be regarded as an incident to and within the fair scope of his employment as the latter should be measured for the purposes of the Workmen's Compensation Act. (Consol.Laws, c. 67). It occurred while he was at work on the undertaking for which he had been hired, and therefore

during the course of his employment. It was his employment which brought him where he was, and in a general sense caused him to be confronted with the condition and emergency which he sought to meet. His act was prompted by the relationship existing between himself and a fellow workman, caused by their employment on a common undertaking. It must have been within the reasonable anticipation of his employer that his employees would do just as Waters did if the occasion arose, for it is quite inconceivable that any employer should expect or direct his employees to stand still while the life of a fellow workman, working a few feet away, was imperiled by such an accident as occurred here, and it seems to us that the accident arose out of his employment.

See also *Babington v. Yellow Taxi Corp.*, 250 N.Y. 14, 164, N.E. 726, 61 A.L.R. 1354 (1928).

To the same effect, upon almost identical facts as in the *Waters* case was the decision of the Supreme Court of Oklahoma in the case of *Denton v. Young*, 203 Okl. 688, 226 P.2d 406 (1950). The Oklahoma Court relied upon the New York decision above referred to, and allowed compensation to an employee of a subcontractor who undertook to aid an employee of another subcontractor on the same job. The court indicated that its decision was not without limits, however, and said:

The conclusion reached must be narrowly confined and kept within the proper limits. It must be limited to cases of urgent emergency, such case in which an employer would naturally expect his employee to go to the relief of one in dire distress.

The Supreme Court of Illinois in the case of *Puttkammer v. Industrial Commission,* 371 Ill. 497, 21 N.E.2d 575 (1939), allowed compensation to a truck driver who had stopped at the scene of a collision in which he was not involved, and who was killed while carrying an injured child away from the accident. The Illinois Court reasoned that the rescue was a natural incident to be expected in the course of employment of this kind. See also *Checker Taxi Co. v. Industrial Comm'n.,* 33 Ill.2d 264, 211 N.E.2d 273 (1965), (cab driver injured assisting two boys who were trying to escape from assailants).

These cases and others are discussed in 1 Larson, Workmen's Compensation Law secs. 28.20, et seq. The editor regards these decisions favorably, and points out the moral desirability and broad humanitarian principles involved, although he concedes that cases involving the rescue of strangers raise the "really controversial issue" in the rescue field. Larson classifies the cases above discussed as allowing compensation because conditions of employment threw in claimant's path the necessity of making the rescue. Favorable comment is also made upon the decision of the United States Supreme Court in the case of *O'Leary v. Brown-Pacific-Maxon, Inc.,* 340 U.S. 504, 71 S.Ct. 470, 95 L.Ed. 483 (1951), where an employee of a government contractor drowned while undertaking to rescue swimmers in apparent distress. The Supreme Court of the United States, in a six to three decision, held that the deceased employee was entitled to benefits under the Longshoremen's and Harbor Workers' Compensation Act. (33 U.S.C.A. sec. 901 et seq.). There recovery was allowed, according to Larson, solely upon a "positional risk" concept—the employment brought the employee to a place where he encountered a moral

obligation to rescue a stranger. The Supreme Court of Louisiana has indicated that workmen's compensation should be allowed in a similar situation where an employee in a forest observation tower saw a child being attacked by a dog near the foot of the tower. He hurried down the stairway and killed the dog, which proved to be rabid, but in the course of the exertion sustained an inguinal hernia. *Edwards v. Louisiana Forestry Commission,* 221 La. 818, 60 So.2d 449 (1952).

On the other hand, a substantial number of courts, while recognizing the social desirability of the acts of the employee and the broad humanitarian considerations involved which make it natural to wish to award compensation to a person injured in a rescue effort, have found difficulty in imposing liability upon an employer under the contractual principles underlying workmen's compensation law. It is not difficult to impose liability upon a wrongdoer or tort-feasor who has negligently created the peril to which the rescuer responds. It is sometimes difficult to keep concepts or language appropriate to tort cases from being inappropriately transferred to the field of workmen's compensation, which rests upon a contract of employment between an employee and an employer, and where insurance benefits are paid to an employee injured by accident arising out of and in the course of his employment.

In the case of *Weidenbach v. Miller,* 237 Minn. 278, 55 N.W.2d 289 (1952), the Supreme Court of Minnesota denied compensation to a truck driver who was drowned while undertaking to rescue a stranger who was floundering in a lake. Although this decision is critical in 1 Larson, Workmen's Compensation, sec. 28.23, it contains an excellent review of the cases in the field. The Minnesota

Court was unable to find the rescue effort to be incidental to the contract of employment. Even the courts in New York, where *Waters v. William J. Taylor Co.,* supra, was decided, found it necessary to limit liability in rescue cases in the workmen's compensation field. A few years after the *Waters* case was decided, the Appellate Division decided the case of *Priglise v. Fonda, Johnstown & Gloversville R. R.,* 192 App.Div. 776, 183 N.Y.S. 414 (1920). There a flagman for one railroad company left his post of duty and undertook to rescue children endangered on the tracks of another railroad company. He lost his life in the effort, but workmen's compensation benefits were denied. The court undertook to distinguish the *Waters* case by confining that case to rescue of a fellow laborer on the same general project, even though the person rescued in the *Waters* case did not work for the same employer. This to us seems to be a rather tenuous distinction, and we agree with the criticism made of the distinction in Larson, supra, sec. 28.21. It would seem that if compensation were properly allowed in the *Waters* case, it should also have been allowed in the *Priglise* case, or else that compensation should have been denied in both.

In *Sichterman v. Kent Storage Co.,* 217 Mich. 364, 186 N.W. 498, 20 A.L.R. 309 (1922), the Supreme Court of Michigan denied workmen's compensation benefits to a traveling salesman who turned aside from his duties in order to try to assist a peddler, whose wagon had been struck by an automobile. The salesman, Sichterman, stopped his automobile, got out of it and walked back in the road to where the peddler was. He had just inquired whether there was anything which he could do to assist, when he was himself struck by an automobile and fatally injured. The Supreme Court of Michigan re-

viewed at length cases from Michigan and other jurisdictions, including the *Waters* case from New York discussed above. The Michigan Court noted that the New York Court of Appeals itself had made a comment that an employee

> might go so far from his employment and become so thoroughly disconnected from the service of his employer that it would be entirely unreasonable to say that injuries suffered by him arose out of and in the course of his employment * * *,

even if the employee acted "with the laudable purpose of helping another." The Supreme Court of Michigan, in denying liability, said:

> This unfortunate accident occurred when the deceased was performing an act of humanity entirely disassociated from the master's work. It did not arise out of the employment.

■ While recognizing that there is eminent and respectable authority on both sides of the question, we are of the opinion that the better view, particularly in light of previous decisions from Tennessee, which are discussed hereinafter, is that compensation should not be permitted unless the employee acts in some way for the benefit of or in furtherance of the interests of his employer, or pursuant to instructions given by the employer. The matter was well stated by the Supreme Court of North Carolina in the case of *Guest v. Brenner Iron & Metal Co.*, 241 N.C. 448, 85 S.E.2d 596 (1955):

> Basically, whether a plaintiff's claim is compensable turns upon whether the employee acts for the benefit of his employer to any appreciable extent or whether

the employee acts solely for his own benefit or that of a third person.

Although the Supreme Court of North Carolina allowed compensation benefits in that case, which was an extremely close one on the facts, it did so only because the employee was found, to some degree at least, to be furthering the interests of his employer at the time of his injury.

This Court recently denied compensation in two death cases when wage earners employed by a construction company were asphyxiated in a motel in which they were staying while working in a community some distance from their homes. *Knox v. Batson,* 217 Tenn. 620, 399 S.W.2d 765 (1966). This Court pointed out certain well recognized principles in Tennessee, including the following:

The phrases "arising out of" and "in the course of" are not synonymous; but, rather, embody distinct concepts which are primarily basic to liability under the Workmen's Compensation Law. This has been repeatedly stated by this Court. It is only necessary to point out from *McAdams v. Canale* (1956), 200 Tenn. 655, 294 S.W.2d 696, the following:

" 'Rising out of employment' refers to the origin of the injury, while 'in the course of employment' refers to the time, place and circumstances. * * * The injury received must arise 'out of' the employment as well as 'in the course of' employment. *Thornton v. RCA Service Co., Inc.,* 188 Tenn. 644, 221 S.W.2d 954."

Further, the Tennessee law is clear that if an employee suffers an accident in the course of employment,

it does not necessarily follow that the injury arose out of his employment. See *Sandlin v. Gentry* (1957), 201 Tenn. 509, 300 S.W.2d 897, 399 S.W.2d at 770.

Also, in the *Knox* case, supra, the Court pointed out:

Further, the mere presence of the employee at the place of injury because of employment will not alone result in the injury being considered as arising out of the employment. Injury or death of an employee, to be compensable, must arise out of a risk peculiar to the employment. 399 S.W.2d at 770.

This language seems difficult to reconcile with the "positional risk" concept utilized in the case of *O'Leary v. Brown-Pacific-Maxon, Inc.*, supra.

Likewise, in the case of *Armstrong v. Liles Construction Co.*, 215 Tenn. 678, 389 S.W.2d 261 (1965), the Court, in dealing with the question of whether an employee, who was injured while driving his automobile, could recover said:

In these cases where the employee is engaged in travel which is not ordinarily within the scope of his employment, the relation of the accident to the injury is an essential point of inquiry. The question is whether the employer exposed the employee to the risk. The service to the employer must, then, be at least a concurrent cause of the injury. Where a private purpose and a service to the employer coexist, the facts of the case must permit the inference that the journey would have been made even though the private purpose had been abandoned. The test is whether it is the employment or something else that impels the journey and exposes the traveler to its risks. 389 S.W.2d at 264.

In the case of *American Casualty Co. v. McDonald,* 166 Tenn. 25, 57 S.W.2d 795 (1933), the Court, dealing with a case in which an employee had deviated from his employment on a personal mission to accommodate another, said:

Compensation may not be recovered if the employee when injured has departed from the service of the master and is performing a voluntary service for the accommodation of another. 166 Tenn. at 26, 57 S.W.2d at 796.

In another deviation case, *Lumbermen's Mutual Casualty Co. v. Dedmon,* 196 Tenn. 94, 264 S.W.2d 567 (1954), this Court referred with approval to the *Sichterman* case, supra, from Michigan, as illustrating the strictness with which courts have denied liability where there is a deviation, so that an employee exposes himself to a hazard in no way connected with his employment.

█ It is pointed out by counsel for the employer in the present case that the claimant below was in no danger whatever initially, and that he voluntarily left his post of duty to go to the assistance of an employee of another company; it was while voluntarily aiding the latter that he sustained his injury. Of course, this is true in practically all of the rescue cases, but, with all deference to the courts which have decided otherwise, we find it difficult to conclude that voluntary aid to a stranger is a hazard to which an employee is exposed by his employment, or that it is a work-related risk. That it is forseeable in the sense used in negligence cases, we readily agree. That it "arises out of" employment, however, we do not necessarily agree. We recognize that a different result might be justified if the injured claimant were undertaking to rescue a fellow employee, in whose welfare the em-

ployer had a pecuniary rather than a humanitarian interest, and to whom the employer owed some duty to rescue; the same might be said where an employee is injured in following orders given him, or in saving or rescuing properties belonging to the employer, or in averting some risk or danger created by the employer, and from which the employer might well suffer adverse legal or financial consequences.

This Court has on many occasions denied workmen's compensation where an employee left his place of employment on a personal mission. See *Toombs v. Liberty Mutual Insurance Co.*, 173 Tenn. 38, 114 S.W.2d 785 (1938); *Timmerman v. Kerr Glass Mfg. Co.*, 203 Tenn. 543, 314 S.W.2d 31 (1958). In the latter case the Court said:

In determining these compensation cases injuries growing out of actual performances of the direct duties of the job rarely ever give us any trouble, it is the injuries which arise out of the claimed incidental activities which have given the courts much trouble. We would say that normally injuries arising from the usual and reasonable incidents to the employment are compensable, but when a thing being done is extraordinary and not done at the direction of the employer then we doubt seriously that they are incidental to the employment. This being true of course they would be outside of the course of employment. Some of these things that are done are by no means indispensable to the accomplishment of the job. These people being as far away from home as they were, it was not an incident to their jobs that they should return home over this weekend. They, it seems to us, were assuming the hazards to be undertaken on such a trip. By taking a

trip of the kind they were outside the range of employment connected activities. What they were doing certainly did not directly or indirectly, as far as we can see, contribute anything to the work which they were engaged in. 203 Tenn. at 547, 314 S.W.2d at 33.

Likewise, where an employee is injured while performing duties not assigned to him and involving unusual peril, not within the duties for which he was employed, compensation has been denied. *Davis v. Wabash-Green Door*, 185 Tenn. 169, 204 S.W.2d 87 (1947); *Leonard v. Cransberry Furnace Co.*, 150 Tenn. 346, 265 S.W. 543 (1924). In the latter case, the deceased was employed as a laborer to shovel ore unloaded from freight cars. The cars had swinging floor doors held in position, when loaded, by chains; it was through these doors that ore was dumped. The loosening of the supporting chains and the dumping of the ore were skilled tasks, calling for more skill and experience than the work of shoveling, for which the employee had been engaged. The deceased employee was killed while undertaking to open one of the car doors. This Court, denying compensation benefits, said:

It may be said that the test is one of contract rather than of conduct. If the employee is within the contemplation of his contract, if he is doing that which by his contract, either expressly or by implication, is made his duty, then he is in the course of his employment, however negligent his conduct may be. 150 Tenn. at 354, 265 S.W. at 545.

Many of the courts which have permitted workmen's compensation benefits in rescue cases have spoken in

terms of forseeability, and the reasonableness of the employee's conduct. It has been said that an employer should be able to anticipate or foresee that an employee would respond, almost by instinct, to the danger of another. This type of reasoning is entirely appropriate in tort cases, where liability is being imposed upon a wrongdoer who has negligently created the risk. In the case of *Leonard v. Cranberry Furnace Co.*, supra, however, this Court made the following comment with respect to foreseeability or foresight, insofar is it pertains to workmen's compensation benefits:

Unrestricted hazard would be destructive of enterprise. It is essential that the injury to the employee which the law obligates the employer to compensate for be one that by the exercise of foresight the employer might have contemplated as a result of engaging in the business and contracting with his workmen. And, unless he may reasonably classify his hazards and select and instruct his workmen with due regard thereto, having in mind the greater or less skill and experience required under varying conditions, with assurance that his responsibility may be measured accordingly, his case would be desperate. 150 Tenn. at 351, 265 S.W. at 544.

We are persuaded that under the facts of the present case, the injury sustained by the claimant while undertaking to rescue a third person under circumstances with which the employer had no connection, financial or otherwise, did not arise out of his employment. The risk of injury under such circumstances was not a hazard of his occupation, nor an incident of his employment.

The judgment of the trial court is reversed and the suit dismissed at the cost of defendant in error, Ridge.

Reversed and dismissed.

BURNETT, CHIEF JUSTICE, and DYER, CHATTIN and CRESON, JUSTICES, concur.