**FILED**
**Jun 05, 2023**
**11:01 AM(CT)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
# AT MEMPHIS

| | | |
|---|---|---|
| **OLIVIA TUZNIK,** | ) | **Docket No. 2022-08-1220** |
| **Employee,** | ) | |
| **v.** | ) | |
| **PUMP IT UP,** | ) | **State File No. 73085-2022** |
| **Employer,** | ) | |
| **And** | ) | |
| **AMGUARD INSURANCE CO.,** | ) | **Judge Shaterra R. Marion** |
| **Carrier.** | ) | |
| | ) | |

---

## EXPEDITED HEARING ORDER GRANTING BENEFITS AND DENYING ATTORNEY'S FEES

---

The Court held an Expedited Hearing on May 22, 2023, to determine whether Ms. Tuznik is entitled to medical and temporary disability benefits for her right-hand injury. Ms. Tuznik also seeks attorney's fees for wrongful denial of her claim. The Court finds that Ms. Tuznik is likely to prove at a hearing on the merits that her hand injury occurred in the course and scope of her employment, entitling her to benefits, but declines to award attorney's fees at this time.

### History of Claim

On October 7, 2022, Ms. Tuznik came up behind a co-worker, startled her, and the co-worker then sprayed Ms. Tuznik in the eyes with cleaning solution. Ms. Tuznik backed up, hit a helium tank, and it fell, crushing her right hand. Pump It Up denied the claim based on horseplay and deviation from employment.

Ms. Tuznik suffered a partial amputation of one finger and multiple fractures in three fingers. Her treatment with Dr. Jake Weller has included imaging, multiple surgeries, placing and removing multiple pins, and physical therapy. Dr. Weller wrote that the helium tank falling on Ms. Tuznik's hand caused her injury and need for treatment.

1

On the night of the accident, Ms. Tuznik worked alongside a new trainee. She testified that they completed their party responsibilities, and the trainee was simply watching the children eat. Ms. Tuznik went to help clean another room connected to the room with the trainee by a closed door. Because they were closing for the night, everything needed to be cleaned before the employees went home. Normally employees would clean dirty rooms even if that room was not assigned to them. As Ms. Tuznik headed to the supply closet to get a vacuum, she saw her coworker enter the closet and decided to scare her.

Ms. Tuznik described Pump It Up as a fun place to work. She testified to and presented videos of employees having scaring competitions with each other, playing in large buckets, playing with candles, climbing on trash cans, laughing while using knives to pop balloons, and playing with a security guard's handcuffs. She stated that this playful behavior was routine at Pump It Up. She could not recall anyone getting written up or reprimanded due to these behaviors.

Kaya Johnson, Ms. Tuznik's supervisor, testified that a few months before the injury, she advised Ms. Tuznik not to scare people anymore. She further said that if she saw Ms. Tuznik attempting to scare someone, she would reprimand Ms. Tuznik, inform the owner, and write her up. Ms. Johnson testified that she had been provided with an employment handbook, but she was not sure if it outlined disciplinary procedures.

Ms. Johnson saw Ms. Tuznik engaging in horseplay between the first incident and the date of injury and told Ms. Tuznik not to do it and to return to work. Ms. Johnson said she believed Ms. Tuznik was violating orders to not engage in that sort of behavior at the time of the injury. However, she could not recall if a rule exists related specifically to horseplay, and she never informed the owner of any problems with Ms. Tuznik and horseplay.

Ms. Johnson stated she was aware of a security guard who played with handcuffs, but no employees were disciplined for handcuffing or any other horseplay. Additionally, videos were presented showing Ms. Johnson wearing a dinosaur mask walking into a room to scare another employee, stabbing balloons with a butcher knife, and spinning Ms. Tuznik in a large bin.

Stephanie Woods, owner of Pump It Up, testified that Ms. Tuznik did not have any disciplinary write-ups in her file, although she had spoken with her about scaring people. She further testified that Ms. Tuznik had begun supervisor training and was a good employee.

Ms. Woods said that the employee handbook contained language about horseplay. However, Ms. Tuznik testified she did not receive the handbook or a safety manual, and Ms. Woods admitted she did not have a signature page showing that Ms. Tuznik was given

2

a handbook. Ms. Woods could not testify as to the disciplinary process for horseplay, though she said that she gives "a couple" verbal warnings before writing up an employee. She outlined situations where employees were written up in the past, including for being late to work, not showing up, and wearing the wrong kind of shoes. However, she did not offer an example of write-ups for horseplay.

Ms. Woods testified that Ms. Tuznik was training a new employee on the date of injury and that she expected Ms. Tuznik to stay with the trainee as opposed to cleaning a separate room. However, she acknowledged that sometimes employees do leave their posts to clean other areas.

Dr. Weller stated he would have taken Ms. Tuznik off work for two weeks after her October 13, 2022 surgery, then would have returned her to work with restrictions. He placed her work status as "weightbearing as tolerated" effective May 9, 2023. Ms. Woods testified that she could accommodate Ms. Tuznik's light-duty work restrictions and contacted her in November 2022 about returning to work. According to Ms. Woods, Ms. Tuznik could answer calls, work on the computer, and continue parts of supervisor training. Ms. Tuznik testified that she could have taken pictures of the customers or greeted people while the pins were in her fingers.

Gerard Tuznik, Ms. Tuznik's father, testified that he and/or his personal health insurance paid for Ms. Tuznik's treatment. He paid approximately $6,400.00. Further, they traveled approximately thirty-four miles roundtrip forty-nine times to transport Ms. Tuznik for medical treatment.

The parties agreed that Ms. Tuznik's compensation rate is $168.15.

**Findings of Fact and Conclusions of Law**

Ms. Tuznik has the burden to come forward with sufficient evidence from which the trial court can determine she is likely to prevail at a hearing on the merits. *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015).

*Course and Scope of Employment*

Ms. Tuznik must prove she is likely to prevail at a hearing on the merits that her hand injury arose primarily out of and in the course and scope of her employment. Tenn. Code Ann. § 50-6-239(d)(1) (2022). Pump It Up argued that Ms. Tuznik's actions were a deviation from her work activities and fell outside the course and scope of her employment.

An injury occurs in the course and scope of employment if it takes place "within the period of the employment, at a place where the employee reasonably may be, and while

3

the employee is fulfilling work duties or engaged in doing something incidental thereto.'" *Blankenship v. Am. Ordnance Sys.,* 164 S.W.3d 350, 354 (Tenn. 2005). Arising out of employment refers to causation. *Reeser v. Yellow Freight Sys., Inc.,* 938 S.W.2d 690, 692 (Tenn. 1997). An injury arises out of employment when there is a causal connection between the conditions under which the work is required to be performed and the resulting injury. *Fritts v. Safety Nat'l Cas. Corp.*, 163 S.W.3d 673, 678 (Tenn. 2005).

Ms. Tuznik credibly testified that she was entering the closet to retrieve a vacuum when she saw a coworker and decided to scare her. She testified her job duties included vacuuming the party room, therefore her location and intent of going to the closet were reasonable. Ms. Tuznik stating "boo," while engaged in her work activities, does not constitute a significant deviation that would deem her actions outside the scope of her work duties.

Additionally, the Tennessee Supreme Court has held that "compensation should not be permitted unless the employee acts in some way for the benefit of or in furtherance of the interests of [her] employer, or pursuant to instructions given by the employer." *Lennon v. Ridge*, 412 S.W.2d 638, 644 (Tenn. 1967). Further, a Supreme Court Panel held that "as long as [a deviation from the employee's normal job duties] is for the benefit of the employer, it does not matter that it also serves purposes of the employee." *English v. Compass Grp. USA*, No. E2012-02732-WC-R3-WC, 2013 Tenn. LEXIS 997, at *11 (Tenn. Workers' Comp. Panel Dec. 9, 2013).

Thus, even if the Court agreed with Pump It Up that Ms. Tuznik deviated from her responsibilities of staying with her assigned party and trainee, her actions nonetheless benefited the employer. The Court holds that Ms. Tuznik is likely to prevail on establishing that her injury arose primarily out of and within the course and scope of her employment.

*Willful Misconduct*

Pump It Up raised a horseplay defense. By doing so, it bears the burden of proof on proving the defense. Tenn. Code Ann. § 50-6-110(b).

The factors for willful misconduct from the Tennessee Supreme Court are: (1) the employee's actual, as opposed to constructive, notice of the rule; (2) the employee's understanding of the danger involved in violating the rule; (3) the employer's bona fide enforcement of the rule; and (4) the employee's lack of a valid excuse for violating the rule. *Mitchell v. Fayetteville Pub. Utils.*, 368 S.W.3d 442, 453 (Tenn. 2012).

Applying these factors, whether Pump It Up had an official rule against horseplay is unclear. Although Ms. Woods testified that horseplay is mentioned in the employment handbook, the handbook was not introduced into evidence, nor did the evidence show that

4

Ms. Tuznik received it. Pump It Up did not prove that Ms. Tuznik understood the danger associated with scaring co-workers.

If there were a rule, it appears to have been oft-violated, as shown in the testimony and multiple videos detailing examples of horseplay and employees scaring each other. Pump It Up did not show bona fide enforcement of the rule, as it did not have a consistent disciplinary procedure and did not enforce the alleged rule aside from inconsistent verbal warnings. Pump It Up provided no evidence of anyone ever being written up for horseplay. Just the opposite: despite multiple examples of both Ms. Johnson and Ms. Tuznik engaging in horseplay, Pump It Up promoted Ms. Johnson to supervisor and enrolled Ms. Tuznik in supervisor training.

Considering the *Mitchell* factors, the Court holds Ms. Tuznik is likely to prevail against the willful misconduct defense.

*Medical Benefits*

In circumstances where an employer refuses to provide medical treatment and/or denies an employee's claim, it runs the risk that a physician of the employee's choosing will be designated the authorized physician, and it will be responsible for paying for treatment provided by that physician. *GAF Bldg. Materials v. George,* No. M2000-00951-WC-R3-CV, 47 S.W.3d 430, 433 (Tenn. Workers' Comp. Panel Mar. 26, 2001). Here, Pump It Up's denial of the claim forced Ms. Tuznik to seek her own treatment with Dr. Weller. Due also to the length and extent of his treatment, Dr. Weller is designated as the authorized treating physician.

Regarding Ms. Tuznik's past medical expenses, she submitted bills from St. Francis Hospital, Memphis Radiological Group, Campbell Clinic, Le Bonheur Children's Hospital, and a Blue Cross Blue Shield of Tennessee lien. The Court holds that Pump It Up must pay all reasonable, necessary, and related past medical bills. Additionally, the Court holds Pump It Up must pay for any future reasonable, necessary, and related medical care.

Mr. Tuznik testified regarding his out-of-pocket expenses and mileage; however, he did not offer proof as to exact amounts. Therefore, although the Court has found that Ms. Tuznik is likely to prevail at a hearing on the merits requesting medical benefits, the Court is unable to award the specific amounts for out-of-pocket expenses and mileage at this time.[1]

---

[1] During Mr. Tuznik's testimony, Pump It Up acknowledged that if the Court determines Ms. Tuznik is likely to prevail at a hearing on the merits regarding medical benefits, it will be responsible for the related out-of-pocket expenses.

*Temporary Total Disability Benefits*

An employee is entitled to receive temporary total disability benefits under Tennessee Code Annotated section 50-6-207(1) whenever she has suffered a compensable, work-related injury that left her unable to work. *Simpson v. Satterfield*, 564 S.W.2d 953 (Tenn. 1978). Entitlement to temporary total disability benefits ends whenever an employee reaches maximum medical improvement or returns to work. *Cleek v. Wal-Mart Stores, Inc.*, 19 S.W.3d 770, 776 (Tenn. 2000).

Here, Dr. Weller would have restricted Ms. Tuznik from working from the date of injury until two weeks after her October 13, 2022 surgery, then put her at light duty. Ms. Woods testified to several available light-duty jobs, and Ms. Tuznik acknowledged some of those jobs. Therefore, the Court holds that Pump It Up shall pay Ms. Tuznik temporary disability benefits from October 7 to October 27, 2022, which totals $504.45.

*Attorney's Fees*

The Court may award attorney's fees when an employer "[w]rongfully denies a claim." Tenn. Code Ann. § 50-6-226(d)(1)(B). The awarding of attorney's fees at an interlocutory stage "should only be made in extremely limited circumstances" due to the incompleteness of proof at this stage, the standard of proof at expedited hearings, and the uncertainties inherent in the litigation. *Thompson v. Comcast Corp.*, 2018 TN Wrk. Comp. App. Bd. LEXIS 1, at *28-29 (Jan. 30, 2018).

The Court finds that this case does not warrant the "extremely limited circumstances" contemplated in *Thompson* and thus declines to award attorney's fees at this time. Ms. Tuznik may renew her request at the Compensation Hearing.

**IT IS THEREFORE ORDERED** as follows:

1. Pump It Up shall pay for reasonable and necessary medical benefits related to Ms. Tuznik's work-related right hand injury.

2. Dr. Jake Weller is designated as Ms. Tuznik's authorized treating physician.

3. Ms. Tuznik is awarded temporary disability benefits at the agreed compensation rate of $168.15 from October 7 to October 27, 2022, for a total of $504.45. Her attorney is entitled to fees of twenty percent from this award.

4. Ms. Tuznik's request for attorney's fees is denied at this time.

5. The Court sets **a status conference for July 24, 2023, at 11:00 a.m. Central Time.** The parties must call **(866) 943-0014** to participate. Failure to call may result in a determination of the issues without the party's participation.

6. Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3). The Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.

**ENTERED June 5, 2023.**

_____
**Judge Shaterra R. Marion**
**Court of Workers' Compensation Claims**

## APPENDIX

Exhibits:
1. Indexed Medical Records
2. Medical Records from Le Bonheur Children's Hospital
3. Deposition of Kaya Johnson with Exhibits
4. Text Messages between Olivia Tuznik and Stephanie Michelle Masserano-Woods
5. Video of the October 7, 2022 Work Injury
6. Medical Bills
7. Medical Lien
8. Video Taken by Olivia Tuznik Depicting Kaya Johnson in a dinosaur mask
9. Video Taken by Olivia Tuznik Depicting Kaya Johnson spinning her in a present bucket
10. Video Taken by Olivia Tuznik Depicting Kaya Johnson Popping Balloons with a Knife

Technical Record:
1. Petitions for Benefit Determination
2. Dispute Certification Notice with Additional Issues Letter and Letter of Denial
3. Hearing Request, along with Affidavit of Olivia Tuznik, filed March 28, 2023
4. Order on Status Hearing and Setting Expedited Hearing Date, dated April 17, 2023
5. Employee's Exhibit List
6. Employer's Exhibit List
7. Employer's Witness List
8. Employer's Pre-Hearing Brief

## CERTIFICATE OF SERVICE

I certify that a copy of this Order was sent as indicated on June 5, 2023.

| Name | Mail | Email | Service sent to: |
|---|---|---|---|
| Rhoberta Orsland, Employee's attorney | | X | rorsland@forthepeople.com |
| Allen Callison, Employer's attorney | | X | allen.callison@mgclaw.com |

_____

**Penny Shrum**
Clerk, Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov



## NOTICE OF APPEAL
Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

**Docket No.:** _____

**State File No.:** _____

**Date of Injury: _____**

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____  ☐ Motion Order filed on _____

☐ Compensation Order filed on_____  ☐ Other Order filed on_____

issued by Judge _____.

### Statement of the Issues on Appeal
Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____
_____
_____
_____

### Parties
**Appellant(s)** (Requesting Party): _____ ☐Employer ☐Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐Employer ☐Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**


### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 ____.


_____

*[Signature of appellant or attorney for appellant]*