Ralph L. HALL, Appellant,

v.

The MASON DIXON LINES, INC., and National Union Fire Insurance Co., Appellees.

Supreme Court of Tennessee, at Nashville.

Dec. 21, 1987.

Robert E. Kolarich, Wm. Ritchie Pigue, Nashville, for appellant.

Thomas M. Donnell, Jr., M. Reid Estes, Jr., Stewart, Estes & Donnell, Nashville, for appellees.

## OPINION

FONES, Justice.

In this worker's compensation case, the trial court granted defendants' motion to dismiss at the conclusion of plaintiff's proof. The sole issue presented on this appeal is whether the trial court erred in its finding that plaintiff's injuries did not arise out of and in the course of his employment. We affirm.

On 19 May 1985, plaintiff, Robert L. Hall, was employed as a driver by defendant, Mason & Dixon Lines, Incorporated. On that date, while driving a tractor-trailer rig through Davidson County at defendant's direction, plaintiff observed a stalled vehicle blocking the left-hand lane of Interstate Highway 40 West. As plaintiff passed the vehicle, he observed a girl who was apparently trapped inside the automobile. Plaintiff parked his tractor-trailer rig on the side of the road and then helped extricate the girl from the car. After the rescue, plaintiff began directing traffic around the stalled car with a flashlight. As he walked behind the damaged vehicle, plaintiff tripped over a guardrail and fell twenty feet to the underpass below. As a result of this fall, plaintiff sustained a sixty percent permanent disability to the body as a whole. Plaintiff filed suit seeking worker's compensation benefits for the injuries he sustained as a result of this incident. At trial, the chancellor granted defendant's motion to dismiss pursuant to T.R.C.P. 41.-02(2) on the ground that the accident did not arise out of and in the course of plaintiff's employment.

As this cause of action arose prior to 1 July 1985, review by this Court of findings of fact of the chancellor is *governed* by the material evidence rule. *Alley v. Consolidation Coal Co.*, 699 S.W.2d 147 (Tenn.1985).

This case presents the question of the propriety of worker's compensation benefits for injuries sustained in the rescue of a third party, a question first addressed by this Court in *Lennon Co. v. Ridge*, 219 Tenn. 623, 412 S.W.2d 638 (1967). In fact, the facts of *Lennon* are substantially similar to the facts of the present case.

> The rescue involved here was an attempt to assist a person who was not a fellow employee of the claimant, nor was there any property of the employer involved in this rescue. So far as the record before us discloses, there was no pecuniary or other interest of The Lennon Company, Inc., involved, and The Lennon Company, Inc., was in no way legally responsible for the dangerous condition which resulted in the rescue effort by claimant.
>
> The question before the Court, then, is whether or not an employer is liable for workmen's compensation benefits to an employee who is injured in an attempt to rescue a stranger, under circumstances in which the employer has no pecuniary or proprietary interest in the rescue as such and no responsibility for creating the danger out of which the rescue attempt arose.

*Id.* at 626, 412 S.W.2d at 640.

■ In *Lennon*, this Court conducted a detailed analysis of the issue of whether an employer is liable under worker's compensation for injuries incurred during the rescue of a third person. We noted then, and reiterate, that although concepts of tort law such as the "rescue" doctrine applicable to negligence cases may be helpful, they are not controlling in the worker's compensation field. *Id.* at 626–28, 412 S.W.2d at 640–41. Worker's compensation liability is imposed upon the employer, regardless of the fault of either party. But this no-fault liability is not unlimited. The injury by accident must arise out of and in the course of employment for worker's compensation liability to be imposed. T.C.A. § 50–6–102(a)(4). If this test is met, liability will be imposed no matter how rash or foolhardy the employee's conduct, so long as the injury is not "due to the employee's willful misconduct or intentional self-inflicted injury, or due to intoxication, or willful failure or refusal to use a safety appliance or perform a duty required by law." T.C.A. § 50–6–110(a). As a corollary, if the injury does not arise out of and in the course of employment, worker's compensation liability *cannot* be imposed upon the employer no matter how laudable in character the act of the injured employee.

In *Lennon*, this Court reviewed the substantial split of authority among other jurisdictions on the issue of worker's compensation coverage for employees injured while rescuing a third person. We concluded that in light of the previous decisions by this Court that "compensation should not be permitted unless the employee acts in some way for the benefit of or in furtherance of the interests of his employer, or pursuant to instructions given by the employer." *Lennon Company*, 219 Tenn. at 634, 412 S.W.2d at 644. On appeal, plaintiff urges this Court to reverse *Lennon*, and adopt the positional risk doctrine. In the alternative, plaintiff argues that this factual situation should be classified as a "street risk" with compensability to be determined pursuant to the decisions applicable to "street risks."

■ Under the positional risk doctrine compensation is allowed "whenever the injury occurred because the employment required the claimant to occupy what turned out to be a place of danger." 1 Larson, *Workmen's Compensation Law* § 10.00 (1984). Larson advocates the use of this doctrine for rescue situations. He states that "the rescue of a stranger is compensable if the conditions of employment place claimant in a position which requires him by ordinary standards of humanity to undertake the rescue." 1A Larson, *Workmen's Compensation Law* § 28.00 (1985).

■ In *Lennon*, this Court examined and rejected the positional risk doctrine. *Lennon Company*, 219 Tenn. at 636, 412 S.W.2d at 644. This Court noted that "the mere presence of the employee at the place of injury because of employment will not alone result in the injury being considered as arising out of the employment." *Id.* [quoting *Knox v. Batson*, 217 Tenn. 620,

631, 399 S.W.2d 765, 770 (1966) ]. And in a recent case, *Hudson v. Thurston Motor Lines, Inc.*, 583 S.W.2d 597, 599–600 (Tenn. 1979), we refused to adopt the positional risk doctrine for "street risks." Indeed, we have stated on several occasions that classification and labeling is not the best method of determining whether an injury is compensable.

> [I]n determining whether an accident arose out of and in the course of the employment, each case must be decided with respect to its own attendant circumstances and not by resort to some formula. . . .
>
> Generally, an injury arises out of and in the course of the employment if it has a rational causal connection to the work and occurs while the employee is engaged in the duties of his employment. . . .

*Bell v. Kelso Oil Co.*, 597 S.W.2d 731, 734 (Tenn.1980). We once again reject the use of artificial labels and reiterate our belief that, "[i]t is difficult, perhaps impossible to compose a formula which will clearly define" those accidents that result in compensable injuries.

Our inquiry must focus upon whether at the time of the injury plaintiff was engaged in his employment duties, so that the accident may be found to have occurred "in the course of employment." The guidelines for this inquiry for accidents caused by the rescue of third parties was established in *Lennon*. "[C]ompensation should not be permitted unless the employee acts in some way for the benefit of or in furtherance of the interests of his employer, or pursuant to instructions given by the employer." *Lennon Co.*, 219 Tenn. at 634, 412 S.W.2d at 644.

The record at trial establishes that defendant had never instructed plaintiff to aid motorists in distress. Defendant was not required by any statute to aid motorists and defendant had not caused or contributed to the accident involving the car. The rescued girl was neither an employee nor a customer of defendant. We cannot say on this record that the chancellor erred in his determination that defendant did not bene-

fit from the actions of plaintiff, and therefore, plaintiff's injuries were not compensable under *Lennon*.

Finally plaintiff argues that the facts of this case reveal that plaintiff's injuries were caused by a "street risk," and therefore plaintiff is entitled to recover benefits under the law applicable to street risks. *See Hudson v. Thurston Motor Lines, Inc.*, 583 S.W.2d 597 (Tenn.1979). Generally, street risks include simple falls, assaults by highway robbers and automobile accidents. *See, Hudson v. Thurston Motor Lines, Inc., supra; Mayor v. Ward*, 173 Tenn. 91, 114 S.W.2d 804 (1938); *Central Surety & Insurance Corp. v. Court*, 162 Tenn. 477, 36 S.W.2d 907 (1931). Larson adds to this list, "stray bullets, falling trees, and foul balls." 1 Larson, *Workmen's Compensation Law*, § 9.00 (1984). We find it unnecessary to determine whether the plaintiff's injuries were caused by a "street risk." There are two components to compensability under the Tennessee Worker's Compensation scheme. The injuries must arise out of employment, and separately the injuries must have occurred "in the course of employment." *Knox v. Batson*, 217 Tenn. 620, 399 S.W.2d 765 (1966). The "street risk" doctrine only satisfies the "arising out of employment" component. The "course of employment" component must still be satisfied. As we have already concluded that the chancellor did not err in his decision that plaintiff's injuries did not occur "in the course of employment," it is unnecessary for this Court to address the applicability of the "street risk" doctrine.

The order of the chancellor dismissing this action is affirmed. Costs are adjudged against plaintiff.

HARBISON, C.J., and COOPER and O'BRIEN, JJ., concur.

DROWOTA, J., dissents, see separate opinion.

DROWOTA, Justice, dissenting.

Although the opinion of the majority is based upon established precedent regarding the rescue doctrine in Workers' Com-

pensation cases in Tennessee, I think that not only was *Lennon Co., Inc. v. Ridge*, 219 Tenn. 623, 412 S.W.2d 638 (1967), incorrectly decided at the time, but the Court should not now forego this opportunity to overrule *Lennon* and to adopt the rescue doctrine. Consequently, I must respectfully dissent from the decision in this case. The facts need not be restated to any extent for the purposes of this dissent, but I do note that the accident involving Plaintiff occurred at night (10:30 p.m.), increasing the danger to Plaintiff, to the young girl, age 16, who was alone in the disabled car, and to approaching traffic along the interstate. The car was in a dangerous position because it was on a curve and completely blocking the left lane of traffic. In addition, the injured girl's car was stalled on the interstate because it had struck a guard rail, jamming the doors shut and preventing the girl from getting out of the car.

The split of authority in this area of the law, which is recognized in *Lennon*, is premised not on any express statutory preclusions of the imposition of liability in these circumstances but on the simple fact that a policy decision is required in such cases. Nothing in the Workers' Compensation Act (the Act) itself prevents extending coverage in rescue cases. As stated by Arthur Larson in his treatise on *The Law of Workman's Compensation*, § 28.23, "[t]he issue [is] not only one of law—it [is] the kind of groundbreaking legal question for which courts of last resort have a peculiarly pressing responsibility to play their part in the development of compensation law." The causal nexus between the conditions of Plaintiff's employment and the injury he received is manifest and compelling. "An injury arises out of and in the course of employment if it has a rational causal connection to the work and occurs while the employee is engaged in the duties of his employment...." *Hall v. Auburntown Industries, Inc.*, 684 S.W.2d 614, 617 (Tenn.1985) (citation omitted). Regardless of the rationale on which the adoption of the rescue doctrine is based, the positional risk theory or the street risk theory, the logic and humanity of the application of the rescue doctrine in Workers' Compensation cases are overwhelmingly clear. The Act is itself humanitarian social legislation intended to alleviate the very problem faced by this Plaintiff—having become disabled to work due to the risks to which his work subjected him, he now needs a source of support to become rehabilitated and to provide necessities to himself and his family, who would otherwise become dependent on government assistance and charity. This is the motivating policy of the Act and this policy must form the basis of decisions regarding the scope of the Act's coverage. Nevertheless, I recognize that the rescue doctrine is not without limits:

> "The rule here stated ... does not go so far as to say that every rescue of a stranger by an employee is covered; it refers to a rescue the necessity for making which is thrown in claimant's path by the conditions of his employment. When claimant is a flagman at a dangerous crossing, or a worker in an area where construction and excavation are in progress, or a truck driver who is certain to encounter collisions along the highway, it is easy to see the connection between the work and the contact with the emergency."

1A Larson, *supra*, § 28.22 (1985).

The rationale underlying the rescue doctrine is as applicable in Workers' Compensation cases as it is in tort cases, despite any other distinctions between these types of actions. Aside from the furtherance of the remedial purposes of the Act itself, permitting Plaintiff to have an income while undergoing rehabilitation, other compelling public policies of this State would be strengthened rather than undermined by the application of the rescue doctrine. Not only is rescue to be encouraged generally as a matter of public policy, but of special significance in modern society is the need to assist helpless or injured motorists on the highways, which can only enhance highway safety and otherwise reduce accidents and their consequences. The decision in this case deters employees whose work involves highway travel from assisting people who are stranded or injured on

the road—since when they voluntarily expose themselves to the danger of making a rescue attempt, they will be excluded from coverage under the Act. This case increases the probability that some traveling employees will now either refrain from rendering assistance, passing accident sites without stopping, or, when the road is blocked by an accident, merely wait passively until the road is cleared by others. Moreover, to distinguish cases on the basis of whether a stranger rather than a fellow employee is the object of a rescue attempt undoubtedly erodes these public policies of the State as well—merely due to the fortuitous event that a stranger rather than a fellow employee (or the employer's property, a customer, or other interest) is at risk.

The types of risks to which a traveling employee would be exposed would include encountering traffic accidents that would necessitate the very response evoked from this Plaintiff.[1] Such risks are naturally incident to the type of employment in which Plaintiff was engaged and would be understood by his employer, who is cognizant of the foreseeable risks of highway travel.

The refusal of the Court to apply the rescue doctrine in Workers' Compensation cases is not consistent with the established policy of the Act and produces arbitrary results when contrasted to numerous other cases in which compensation has been awarded where a rather tenuous causal connection between the circumstances in which the employee worked and the nature of the accident existed. *Cf., e.g., Bell v. Kelso Oil Co.,* 597 S.W.2d 731 (Tenn.1980); *Hudson v. Thurston Motor Lines, Inc.,* 583 S.W.2d 597 (Tenn.1979). Moreover, this arbitrariness becomes even more apparent when variations on the facts of this case are considered, on which facts compensation would ordinarily be awarded. If this Plaintiff had not been able to avoid wrecking into the girl's car with the result that he had been injured, he would have been covered. If he had stopped at a required state weighing station and, while

waiting on the side of the road when he had been injured in a similar manner, he would have been covered. If both lanes of traffic had been blocked by the accident and he had dismounted to help clear a lane, which would enable him to continue and thus benefit his employer, somehow injuring himself in the process, he probably would have been covered. If no accident was involved and instead his truck had broken down, requiring him to dismount to repair it during which efforts he had been injured, he would have been covered. If he had stopped at a rest stop and been robbed and injured, or had merely fallen while returning from a rest room, he would have been covered. If he had exited the interstate for a rest or fuel stop and been involved in an accident, he would have been covered. But if he encounters an accident and, rather than either waiting on the side of the road in his truck for the road to be cleared or rather than just ignoring the situation and driving on his way, he stops to lend assistance to those in danger, he is denied recovery. In my opinion, the irony and arbitrariness of this result is both apparent and wholly unnecessary. This case clearly involves the kind of accident that is both completely foreseeable and within the contemplation of the Act.

As a practical matter, the unfortunate injury suffered by this Plaintiff both arose out of and in the course of his employment. For the employer to expect that its truck drivers would pass by such an accident and leave a young girl helplessly trapped in an immobilized car in a lane of a heavily traveled interstate highway at night is more than logic and basic decency can endure. In *Lennon Co., supra,* 219 Tenn. at 634, 412 S.W.2d at 645, the Court recognized "that a different result might be justified if the injured claimant were undertaking to rescue a fellow employee, in whose welfare the employer had a pecuniary rather than a humanitarian interest ... or in saving or rescuing properties belonging to the employer...." To deny this Plaintiff recov-

---

1. The record in this case included evidence that assistance similar to that rendered by Plaintiff had been encouraged by the employer.

ery because no tangible benefit to any interest of the employer can be identified places economic interests above the humanitarian purposes that underlie the Act. As a result, an employee who rescues an object belonging to the employer will recover but an employee who rescues a stranger will not—with such cold logic I cannot agree. Because no provision of the Act and no policy of this State precludes the adoption of the rescue doctrine in these cases, I must respectfully dissent.