COURT OF WORKERS’ COMPENSATION CLAIMS
 AT NASHVILLE

DOUGLAS GRIFFIN )
 Employee, ) Docket No.: 2015-06-0020
 )
v. ) State File No.: 77527-2014
 )
AL’S LIQUOR STORE, D/B/A FRUGAL ) Date of Injury: SEPT. 27, 2014
MCDOOGALS, )
 ) Judge: BAKER
 Employer, )
 )
And )
 )
NORGUARD INS. CO. )

 EXPEDITED HEARING ORDER

 THIS CAUSE came before the Court upon the Request for Expedited Hearing
filed on May 19, 2015, by Douglas Griffin, the employee, pursuant to Tennessee Code
Annotated section 50-6-239. Mr. Griffin asked the Court to review the file and issue a
decision without a hearing. The employer, Al’s Liquor Store d/b/a Frugal McDoogals
(McDoogals), requested an evidentiary hearing. The Court convened an in-person
evidentiary hearing on June 17, 2015. Attorney Cully Ward represented Mr. Griffin, and
attorney Allen Callison represented McDoogals. Upon review of Mr. Griffin’s request for
expedited hearing, the evidence presented at the hearing, and in consideration of the
applicable law, the Court finds that Mr. Griffin is entitled to temporary disability and
medical benefits.

 ANALYSIS

 Issue

 Whether Mr. Griffin’s September 27, 2014 workplace accident arose primarily out
of and in the course and scope of his employment for McDoogals.
 Evidence Submitted

 The Court admitted the following exhibits into evidence:

 Exh. A Medical records of Douglas Griffin (150 pages) and table of contents (1
 page)
 Exh. B Affidavit of Douglas Griffin dated May 18, 2015 (2 pages)
 Exh. C Affidavit of Dr. Keith Caruso dated April 29, 2015, and attached
 documentation (27 pages)
 Exh. D Affidavit of Trena Smith dated May 23, 2015 (2 pages)
 Exh. E Wage Statement.

 The Court designated the following as the technical record:

  Form C-23, Notice of Denial of Claim for Compensation, April 9, 2015
  Petition for Benefit Determination, April 10, 2015
  Dispute Certification Notice, May 13, 2015
  Request for Expedited Hearing, May 19, 2015, with attachments
  Mr. Griffin’s Expedited Hearing Pre-hearing Brief
  McDougal’s letter Objecting to Hearing on Record with attachments, May
 25, 2015
  Mr. Griffin’s Reply to Employer’s Statement of Response, May 27, 2015,
 with attachment
  McDougal’s letter to Ms. Shrum in response to Employee’s Reply, May 28,
 2015
  McDougal’s Pre-Hearing Brief
  McDougal’s Witness List
  McDougal’s Exhibit List.

 The Court did not consider attachments to the above filings unless admitted into
evidence during the Expedited Hearing. The Court considered factual statements in the
above filings, or any attachments to them, as allegations unless established by the
evidence.

 History of Claim

 Mr. Griffin is a fifty-five- (55) year-old resident of Davidson County, Tennessee,
who worked as a cashier for McDoogals. His duties included ringing up items for
purchase, helping customers find items in the store, retrieving stock from the warehouse
and assisting customers in loading items into their cars. Mr. Griffin testified that he did
not have a written job description or instruction concerning his job duties. He further
testified that he was not given written instruction on dealing with shoplifters.

 2
 On September 27, 2014, Mr. Griffin arrived at McDoogals at 8:00 a.m. to start his
shift. Around 11:30 a.m., Mr. Griffin was checking out customers at the “fourth”
register, approximately thirty-to-forty feet (30’-40’) from the front doors, while his co-
employees, Samantha and Trena Smith, worked the “first” and “second” registers, located
closer to the front doors.1 The store was very busy.

 Mr. Griffin stated that he saw Samantha walk out of the store and begin speaking
with a man just outside the front doors. Approximately fifteen (15) seconds later, Mr.
Griffin saw Ms. Smith leave her register, and the waiting customers, and walk out the
front doors as well. Mr. Griffin thought it odd that Ms. Smith and Samantha had left the
store. He stated that he did not know why they left but continued to cash out customers.

 Shortly after Ms. Smith and Samantha left the store, Mr. Griffin noticed more
activity by the front doors. To Mr. Griffin, it appeared that the man with which
Samantha had been talking had gotten into his car and was now “kind of shaking” Ms.
Smith and Samantha. In his affidavit, Mr. Griffin stated that he saw “glimpses of arms
flailing.” (Exh. B). Mr. Griffin then heard “two female voices yelling and screaming for
help, very seriously.” When asked whether he knew it was his co-employees who were
“involved,” Mr. Griffin responded “yes.” Mr. Griffin stated that at that point in time, he
had no idea what was happening but knew he had to help Ms. Smith and Samantha.

 Mr. Griffin then left his register and made his way through the crowded store to
the front doors. When he arrived outside, Mr. Griffin testified that “there was no one
there, the car was gone; the people were gone.” Mr. Griffin took a few steps off the curb
and then stopped and looked to the left. At that point Mr. Griffin was standing in the
parking lot of McDoogals immediately in front of a car.

 Mr. Griffin testified that he recognized the car as the one driven by the man who
had been talking with Samantha and Ms. Smith. The man stared at Mr. Griffin from
inside the car as he “gripped” the steering wheel and “clenched” his jaw. At that
moment, Mr. Griffin testified that he knew the man intended to run him over.
Immediately thereafter, the man drove the car forward into his leg. When the bumper of
the car contacted his left leg, he stated that he did not have time to get out of the way and
“. . . had no choice but to just kind of fold over onto the car and just grab on.” After he
grabbed onto the hood, the driver accelerated out of the parking lot taking Mr. Griffin
with him. When the driver slowed to make a right hand turn onto Eighth Avenue, Mr.
Griffin fell off the hood and onto the pavement in the middle of the road.

 The driver who hit Mr. Griffin was ultimately identified as a shoplifter.

1
 Ms. Smith provided an affidavit identifying her co-employee as “Samantha Atchley.” Throughout his
testimony, Mr. Griffin referred to her only as “Samantha.”

 3
McDoogals pursed misdemeanor theft charges against the shoplifter and authorities also
levied assault charges with Mr. Griffin as the key witness.

 Mr. Griffin has not returned to work for McDoogals, or anyone else, since the day
of the accident. The authorized treating physician, Dr. Keith Caruso, provided an
affidavit where he opined that Mr. Griffin suffers from post-traumatic stress disorder, as
well as a major depressive disorder, as a result of the incident. Dr. Caruso further stated
that Mr. Griffin, because of his psychiatric injury, would not be able to work for a period
of six (6) months to one (1) year. (Exh. C).

 On cross-examination, Mr. Griffin stated that he thought he heard the voices of
Samantha and Ms. Smith calling for help when he made his way to the front door.
However, he was not one hundred percent sure, “in that moment of emergency,” who had
been crying for help. When asked whether it was a fair statement that “he had been in the
wrong place at the wrong time,” Mr. Griffin replied, “I can’t argue with that. No.”

 Ms. Smith provided an affidavit that stated the following concerning the events
that occurred in the parking lot:

 When the car had fully exited the parking spot and the driver
 was shifting the gear into drive, Doug Griffin came running
 out of the store and stood directly in front of the vehicle and
 yelled “No!” at the driver. It was clear he was trying to
 prevent the car from exiting the parking lot. The car inched
 forward as if it was threatening to bump him. However,
 rather than get out of the way, Doug Griffin jumped on the
 hood of the car and held onto the hood near where the
 windshield wipers are. He could have gotten out of the way,
 but intentionally jumped onto the car. The car did not
 accelerate into him as described in the police report.

(Exh. D).2

 Concerning treatment of shoplifters, Mr. Griffin testified that he saw employees
chase shoplifters out of the store, tackle them inside the store and take shoplifters to the
back where McDoogals had a pair of handcuffs. He also was aware that McDoogals’
employees did not detain some shoplifters. Mr. Griffin testified that he had seen an
employee who had gotten into a physical altercation with a shoplifter. He further
testified that the store and warehouse manager had gotten into a fist fight with a

2
 During the hearing, counsel for McDoogals asked Mr. Griffin whether he had seen a recording of the
incident. Neither party showed the recording to the Court or entered it as an exhibit. The Court has not
viewed the recording.

 4
shoplifter. Additionally, Mr. Griffin witnessed another employee receive a gift certificate
from “the lady upstairs, Debbie,” after the employee followed a shoplifter out of the store
and recovered a bottle of “skulls head vodka.” He stated that, instead of reprimanding
employees who confronted shoplifters, management was “kind of cheering” and telling
them they had done an “excellent job.”

 Jarrett Bottom, a fifteen- (15) year McDoogals’ employee and the store’s manager,
testified that only management had the authority to pursue shoplifters. If a shoplifter
leaves the building with merchandise and flees in a car, Mr. Bottom stated that a cashier’s
goal should be to get the car’s tag number and be a good witness. Mr. Bottom stated that
he tries to convey this information to McDoogals’ employees but he is not always in the
store.

 Concerning the accident involving Mr. Griffin, Mr. Bottom stated that Samantha
was terminated shortly after the event occurred. Mr. Bottom did not provide any further
information about her termination. According to Mr. Bottom, neither Samantha nor Ms.
Smith reported injuries from the incident.

 Mr. Bottom also testified that the area around McDoogals is “very safe.” He
stated there had been no assaults on McDoogals’ property. Mr. Bottom further testified
that no one had been struck by a vehicle in the parking lot of McDoogals within the past
fifteen (15) years prior to the incident involving Mr. Griffin.

 Despite its denial of the claim, McDoogals continued to provide medical benefits
to Mr. Griffin. McDoogals, however, suspended payment of temporary total disability on
March 11, 2015.

 Stipulations

 At the outset of the hearing, McDoogals and Mr. Griffin stipulated, only for
purposes of this Expedited Hearing, that Mr. Griffin’s mental injury arose out of the
accident itself rather than the physical injury he suffered. Based on this stipulation, and
because Dr. Keith Caruso, the authorized treating physician, has opined that Mr. Griffin
cannot work due to his mental injury, the parties agreed that if the Court determines that
the incident arose primarily out of and in the course and scope of his employment,
McDoogals would be required to resume paying Mr. Griffin temporary total disability
benefits and continue providing medical benefits. Specifically, temporary total disability
benefits would be owed from March 11, 2015, the date McDoogals ceased paying those
benefits, until Mr. Griffin reaches maximum medical improvement or is released to return
to work.

 The parties also stipulated that Mr. Griffin earned an average weekly wage of
$433.53, which yields a compensation rate of $289.02.

 5
 Mr. Griffin’s Contentions

 Mr. Griffin contends that the incident causing his injury arose primarily out of and
in the course and scope of his employment for McDoogals. Mr. Griffin maintains that he
went to the aid of co-employees when he heard their cries for help and that a fleeing
shoplifter ran over him when he went outside to investigate the situation. Mr. Griffin
argues that he acted within the course and scopes of his employment when he came to the
aid of co-employees whom he believed were in distress.

 He further argues that the incident arose out of the employment because the man
who ran him over was attempting to flee after he had shoplifted items from McDoogals.
Mr. Griffin denies that he attempted to stop the shoplifter and maintains that the car ran
over him because he did not have time to get out of the way.

 McDoogals’ Contentions

 McDoogals argues that the incident did not arise primarily out of Mr. Griffin’s
employment. McDoogals argues that there is no causal connection between the incident
and the employment because the risk of Mr. Griffin being struck by a fleeing shoplifter
was not any greater as a result of his employment with McDoogals. McDoogals also
characterized the incident as a neutral “assault” and argued that the employment did not
increase Mr. Griffin’s risk of this type of assault from the general public. Finally,
McDoogals contends that the shoplifter did not assault Mr. Griffin because he worked for
McDougals.

 McDoogals further argues that the incident did not occur in the scope of
employment because Mr. Griffin deviated from his job duties as a cashier when he left
the store to assist a person in distress. McDoogals argues that the “Good Samaritan
Rule” bars recovery because Mr. Griffin’s actions did not benefit the employer.3

 Findings of Fact and Conclusions of Law

 Standard Applied

 “The Workers’ Compensation Law shall not be remedially or liberally construed
in favor of either party but shall be construed fairly, impartially and in accordance with
basic principles of statutory construction favoring neither the employee nor
employer.” Tenn. Code Ann. § 50-6-116 (2014). At an expedited hearing, an employee
3
 McDoogals also raised the defense that Mr. Griffin had willfully violated a known safety rule that
prohibited McDoogals’ employees from chasing shoplifters. At the hearing, counsel for McDoogals
conceded that McDoogals had not carried its burden of proving this affirmative defense. The Court
agrees.

 6
need not prove every element of his or her claim by a preponderance of the evidence in
order to be eligible for benefits. McCord v. Advantage Human Resourcing, No. 2014-06-
0063, 2015 TN Wrk Comp App Bd LEXIS 6, *7-8, 9 (Tenn. Workers’ Comp. App. Bd.
March 27, 2015); cf. McCall v. Nat’l Health Corp., 100 S.W.3d 209, 214 (Tenn.
2003). Instead, an employee must come forward with sufficient evidence from which the
trial judge could conclude that the employee is likely to prevail at a hearing on the
merits. Id.

 Factual Findings

 The Court finds that Mr. Griffin believed that his co-employees, Ms. Smith and
Samantha, were in danger, and that he left McDoogals with the intent of coming to their
aid. Mr. Griffin did not know that the unidentified man had shoplifted from McDoogals.
Mr. Griffin did not intend to stop the shoplifter from leaving the parking lot when he
stood in front of the car. Mr. Griffin could not avoid the car driven toward him by the
shoplifter and had no choice but to hold onto the hood of the car, after it hit him, to avoid
being run over. McDoogals did not have a safety rule that prohibited its employees from
confronting shoplifters. People had shoplifted from McDoogals in the past.

 Application of Law to Facts

 I. Mr. Griffin’s objection to Mr. Bottom’s testimony.

 At the hearing, McDoogals called Jarrett Bottom, the general manager of
McDoogals, as a witness. Mr. Griffin’s counsel objected to Mr. Bottom testifying. The
Court reserved ruling on Mr. Griffin’s objection pending issuance of this order and
allowed Mr. Bottom to testify with the understanding that the Court would not consider
his testimony if it sustained the objection.

 Mr. Griffin, through counsel, argued that the Court should not consider Mr.
Bottom’s testimony because McDoogals failed to provide an affidavit from Mr. Bottom
prior to the Expedited Hearing. Mr. Griffin argued that Rule 0800-02-21-.14(1)(b)
requires McDoogals to “present all information in its position” showing that Mr. Griffin
is “not entitled to temporary disability or medical benefits.” Mr. Griffin argued that
McDoogals’ failure to provide an affidavit violated this rule and also made it impossible
for him to effectively cross-examine Mr. Bottom. Mr. Griffin cited the Appeals Board’s
decision in Hadzic v. Averitt Express, No. 2014-02-0064, 2015 TN Wrk Comp App Bd
LEXIS 14 (Tenn. Workers’ Comp. App. Bd. May 18, 2015) in support of his argument.

 McDoogals, through counsel, argued that the rule does not require the party
opposing the request for temporary benefits to provide affidavits. McDoogals maintains
that if the Division intended the opposing party to provide an affidavit, it would have
stated so in the rule. McDoogals further argues that requiring the opposing party to

 7
marshal its proof within five (5) days, as suggested by Counsel for Mr. Griffin, when the
moving party has essentially sixty (60) days to prepare its proof, is simply unfair.

 For the reasons set forth below, the Court finds that a party opposing a motion for
Expedited Hearing is not required to provide an affidavit before a witness may testify.
Accordingly, the Court overrules Mr. Griffin’s objection and will consider the testimony
of Mr. Bottom in determining this cause.

 Rule 0800-02-21-.14(1)(a) specifically provides that “[a]ll motions for expedited
hearing must be accompanied by an affidavit[.]” The rule governing responses by the
opposing party, Tennessee Comprehensive Rules and Regulations 0800-02-21-.14(1)(b),
however, contains no such language. Instead, the rule requires that the opposing party
submit all “information in its possession” within five (5) business days of the motion’s
filing. Id. As any affidavit submitted by the party opposing the rule would not be in its
possession but would have to be created, an affidavit does not fall within the definition of
“information” in the opposing party’s “possession.”

 The Court finds McDoogals’ argument about the imbalance of time allotted an
opposing party to marshal its proof persuasive. Conversely, the Court does not find Mr.
Griffin’s argument, that the lack of an affidavit unduly prejudiced his ability to cross-
examine the witness, persuasive. By letter dated May 25, 2015, counsel for McDoogals
notified Mr. Griffin’s counsel that it intended to call Mr. Bottom or Jeff Warzynski, the
wine manager, as a witness. The letter further stated that either Mr. Bottom or Mr.
Warzynski would testify that Mr. Griffin’s actions “constituted willful misconduct and/or
violation of a safety rule.” The Court finds that this communication gave Mr. Griffin
sufficient notice of the “information” McDoogals intended to present to prepare for cross-
examination.

 Lastly, the Court is compelled to address Mr. Griffin’s citation of the Hadzic
opinion in support of his position. In Hadzic, the workers’ compensation judge denied
the injured employee’s claim for temporary benefits for reasons based on the judge’s
review of the merits. At the hearing, counsel for the opposing party objected to the
Expedited Hearing proceeding because Mr. Hadzic had not presented an affidavit in
support of his motion for an Expedited Hearing. Hadzic, 2015 TN Wrk Comp. App. Bd.
LEXIS 14, *4. The workers’ compensation judge overruled the objection holding that a
“party is only required to file an affidavit if the moving party intends to rely on the
affidavit[] at the Expedited Hearing,” Id. at *5. Based on the plain and ordinary meaning
of Tennessee Comprehensive Rules and Regulations 0800-02-21-.14(1)(a), the Appeals
Board vacated and remanded the decision. See Id., generally. The Board provided the
following explanation for its decision:

 In short, Rule 0800-02-21-.14(1)(a) cannot be reasonably
 construed as applying only to those situations where the party

 8
 requesting an expedited hearing does not intend to testify at
 the hearing. Giving the terms “all” and “must” their plain and
 ordinary meaning, as we must, we are compelled to conclude
 that the trial court incorrectly determined the filing of an
 affidavit is unnecessary when the party seeking an expedited
 hearing testifies at the hearing. Because the trial court's
 decision is inconsistent with the plain meaning of the
 language of the regulation, it must be set aside as lacking
 legal support.

Id. at 12-13. The Court interprets Hadzic as applying only to circumstances where a
party requesting an Expedited Hearing fails to file a supporting affidavit as required by
Rule 0800-02-21-.14(1)(a). Extending Hadzic to require an affidavit by the responding
party, when Rule 0800-02-21-.14(1)(b) does not expressly require it, would essentially
undermine the Appeals Board’s reasoning.

II. The incident arose primarily out of and occurred within the course and scope
 of Mr. Griffin’s employment for McDoogals.

 Under the Law, an “injury” or “personal injury” by accident is compensable
whenever “the injury is caused by a specific incident, or set of incidents, arising primarily
out of and in the course and scope of employment.” Tenn. Code Ann. § 50-6-102(13)
(2014). “An injury arises primarily out of and in the course and scope of employment
only if it has been shown by a preponderance of the evidence that the employment
contributed more than fifty percent (50%) in causing the injury, considering all causes[.]”
Id. (internal quotations omitted).

 McDoogals argues that Mr. Griffin’s accident did not arise out of or occur in the
course and scope of his employment. The Court disagrees.

 a. The incident occurred in the scope of employment.

 An injury occurs “in the course of” employment if it takes place while the
employee was performing a duty he or she was employed to perform. Fink v. Caudle, 856
S.W.2d 952, 958 (Tenn. 1993). The “in the course of employment requirement” focuses
on the time, place, and circumstances of the injury. Hill v. Eagle Bend Mfg. Inc., 942
S.W.2d 483, 487 (Tenn. 1997). “An accidental injury arises out of and is in the course
and scope of employment if it has a rational connection to the work and occurs while the
employee is engaged in the duties of employment.” Id. at 487 (citing Orman v. Williams
Sonoma, Inc., 803 S.W.2d 672, 676 (Tenn. 1991)).

 McDoogals maintains that Mr. Griffin went outside the scope of his job duties as a
cashier when he left the store to assist his distressed co-employees. McDoogals points to

 9
the “Good Samaritan Rule” in support of its position. In its “Pre-Hearing Brief,”
McDoogals cited Hall v. Mason Dixon Lines, Inc., 743 S.W.2d 148 (Tenn. 1988), in
support of its argument that Mr. Griffin left the scope of his employment when he left the
store to help his co-employees. The Court finds the Hall case distinguishable.

 In Hall, a truck driver stopped his truck on the side of the interstate to assist a girl
trapped in a stalled car. Id. at 149. The driver did not know the girl and she was neither
employed by, or a customer of, the driver’s employer. After helping the girl from the car,
the driver used his flashlight to direct interstate traffic around the girl’s car, which had
blocked one of the lanes. Id. When walking around the stalled car, the driver tripped
over a guardrail and fell twenty (20) feet to the underpass below. Id. The driver suffered
significant injuries and filed for workers’ compensation benefits. Id. The employer
argued that the driver’s injury did not arise out of and in the course and scope of the
employment, and moved to dismiss the claim. Id. The trial court granted the motion. Id.
The driver appealed. The Supreme Court affirmed the trial court and, relying on its
ruling in Lennon Co. v. Ridge, 412 S.W.2d 638 (Tenn. 1967), stated the following:

 Defendant was not required by any statute to aid motorists
 and defendant had not caused or contributed to the accident
 involving the car. The rescued girl was neither an employee
 nor a customer of defendant. We cannot say on this record
 that the chancellor erred in his determination that defendant
 did not benefit from the actions of plaintiff, and therefore,
 plaintiff's injuries were not compensable under Lennon.

Hall, 743 S.W.2d at 150.

 In Lennon, Charles Ridge was working for Lennon on a construction site owned
by another company, Combustion Engineering Company (Combustion). Lennon, 412
S.W.2d at 639. At that same jobsite, an employee of a plumbing contractor, the Sam
Raider Company (Sam Raider), was also working. Id. In a tragic turn of events, the
walls of a ditch collapsed, killing the Sam Raider employee. Id. at 640. Mr. Ridge ran to
the scene of the accident and suffered injury while trying to rescue the Sam Raider
employee. Id. Mr. Ridge sought workers’ compensation benefits from Lennon and the
trial court awarded benefits. Id. Lennon appealed. The Supreme Court reversed, holding
that “…the injuries sustained by the claimant while undertaking to rescue a third person
under circumstances with which the employer had no connection, financial or otherwise,
did not arise out of his employment.” Id. at 646. In its opinion, the Lennon Court
included the following: “We recognize that a different result might be justified if the
injured claimant were undertaking to rescue a fellow employee, in whose welfare the
employer had a pecuniary rather than a humanitarian interest, and to whom the employer
owed some duty to rescue[.]” Id. at 645.

 10
 The facts in this case are distinguishable from those in Lennon, and its progeny,
Hall, which counsel for McDoogals argues bars Mr. Griffin’s recovery. The key
difference, of course, is that Mr. Griffin sought to render aid to co-employees rather than
strangers. The Court finds that McDoogals had a “pecuniary” interest in the welfare of
Samantha and Ms. Smith, who provided their labors to ensure the successful operation of
the business. Because Mr. Griffin went to aid co-employees, his actions benefited
McDoogals. Accordingly, the Court finds that Mr. Griffin acted in the course and scope
of this employment when he responded to Ms. Smith’s and Samantha’s cries for help and
was subsequently injured by a fleeing shoplifter.

 b. The incident arose out of the employment.

 “An accidental injury arises out of employment when there is a causal connection
between the working conditions and the resulting injury.” Fritts v. Safety Nat’l Cas.
Corp., 163 S.W.3d 673, 678 (Tenn. 2005) (citing Phillips v. A&H Constr. Co., 134
S.W.3d 145, 150 (Tenn. 2004)). The Tennessee Supreme Court recognized the following
three categories for workplace assaults:

 (1) Assaults with an “inherent connection” to employment, such as disputes over
 performance, pay, or termination;

 (2) Assaults stemming from “inherently private” disputes imported into the
 employment setting from the claimant's domestic or private life and not
 exacerbated by the employment; and,

 (3) Assaults resulting from a “neutral force” such as random assaults on
 employees by individuals outside the employment relationship.

Woods v. Harry B. Woods Plumbing Co., 967 S.W.2d 768, 771 (Tenn. 1998). Assaults
falling into the first category are compensable. Wait v. Travelers Indem. Co. of Ill., 240
S.W.3d 220, 227 (Tenn. 2007). Assaults falling into the second category are not.
Woods, 967 S.W.2d at 771. The compensability of assaults falling into the third category
“depend[s] on the facts and circumstances of the employment.” Id.

 McDoogals argues that Mr. Griffin suffered an injury due to a “neutral assault.”
The Court agrees. McDoogals further argues that the injury Mr. Griffin suffered through
the neutral assault is not compensable. The Court disagrees.

 In Jesse v. Savings Prods., 772 S.W.2d 425 (Tenn. 1989), a convenience store
clerk suffered a mental injury through a neutral assault when a customer raped her in the
stockroom of the store. In affirming the award of benefits to the store clerk, the Supreme
Court established the following rule: If indiscriminate exposure to the general public is
one of the conditions under which the work is required to be performed, then the actions

 11
of those persons on the premises are reasonably considered hazards of the employment.
Id. at 427.

 In Beck v. State, 779 S.W.2d 367 (Tenn. 1989), the Tennessee Claims Commission
awarded workers’ compensation benefits to an employee of a driver’s license center who
suffered mental injuries when an unknown assailant grabbed her and made suggestive
comments just outside the doors of the center as she asked him to move his car. In
affirming the award of benefits, the Supreme Court stated the following:

 In the case at bar, the assailant had access to Plaintiff because
 her workplace was open to the public. While there is no
 evidence that the assailant was there for any business reason,
 the evidence shows that the assailant attacked Plaintiff after
 she, as a duty of her employment, asked the assailant to move
 his improperly parked car. Just as no one could ever know the
 full intent of the assailant in Jesse, no one will ever know the
 full intent of Plaintiff's assailant. But, as in Jesse, Plaintiff's
 indiscriminate exposure to the general public was one of the
 conditions under which her work was required to be
 performed, and the actions of persons on those premises can
 be considered a hazard of the employment. We therefore find
 a causal relationship existed between Plaintiff's employment
 and the August 7, 1987 assault, and that Plaintiff suffered a
 compensable accidental injury within the statutory definition
 of the Tennessee Workers’ Compensation Laws.

Id. at 371.

 The Court finds that, similar to the workers in Beck and Jesse, the work Mr.
Griffin performed for McDoogals indiscriminately exposed him the to the dangers of the
public. Accordingly, the “street risk doctrine” applies to this case. See Padilla v. Twin
City Fire Ins. Co., 324 S.W.3d 507 (Tenn. 2010) (“[T]he purpose of the “street risk”
doctrine is to “provide[ ] the necessary causal connection between the employment and
the injury” when “the employment exposes the employee to the hazards of the street.”)
(citing Hudson v. Thurston Motor Lines, Inc., 583 S.W.2d 597, 602 (Tenn. 1979); see
also Wait v. Travelers Indemnity Co. of Illinois, 240 S.W.3d 220, 227 (Tenn. 2007). As a
liquor store, McDoogals opened its doors to the public to sell goods. Through interacting
with the public, McDoogals employees were exposed to all the dangers posed by those
entering the store. As the Supreme Court determined in Beck, the exposure to the general
public and “their actions on the premises can be considered a hazard of employment.” Id.

 The Court finds that Mr. Griffin’s employment with McDougals indiscriminately
exposed him to this risk. Here, a fleeing shoplifter hit Mr. Griffin with his car and he

 12
suffered serious injury. The testimony at trial showed that people had shoplifted from the
store in the past and at least one employee had been injured in an altercation with a
shoplifter.

 At the hearing, Mr. Bottom testified that the area around McDoogals is “very safe”
and stated that no one had been assaulted on McDoogals’ property or hit by a car in the
parking lot in the last fifteen (15) years. The testimony both of McDoogals operating in a
safe neighborhood and of no similar incidents occurring previously does not deem the
first criminal act or other injurious occurrence noncompensable. It is the risk inherent in
the exposure to the public as determined by an examination of the conditions under which
the work is performed that defines the “arising out of component,” not the absence of
prior incidents. Furthermore, because shoplifters had taken items from McDougals
before, violence from shoplifters was a foreseeable hazard.

 McDoogals also cites Scott v. Shinn, 105 S.W.2d 103 (Tenn. 1937); Wait v.
Travelers Indemnity Co. of Illinois, 240 S.W.3d 220, 227 (Tenn. 2007); and Padilla v.
Twin City Fire Ins. Co., 324 S.W.3d 507 (Tenn. 2010) in its prehearing brief. These
cases are all distinguishable from the instant matter and provide no support for a finding
of noncompensability.

 In Scott, the employee, a delivery driver, died when a robber shot him at a delivery
stop. 105 S.W.2d at 104. The robber did not know the employee, did not take anything
from him or his employer and the robbery did not occur on the employer’s premises. Id.
For those reasons, the Supreme Court held that the robbery had no causal connection to
the employment. Id. at 105. Here, Mr. Griffin suffered injury when someone who had
taken items from McDoogals ran him over while fleeing the McDoogals’ parking lot.

 In Wait, an assailant attacked a telecommuting employee while she made lunch in
her kitchen during a break. 240 S.W.3d at 223. The trial court denied compensation and
the Supreme Court affirmed. Though finding the employee to be in the course of
employment, it held that the injury did not arise out of the employment because the facts
did not establish that “the plaintiff's employment exposed her to a street hazard or that
she was singled out for her association with her employer.” Id. at 229. Unlike the
worker in Wait, Mr. Griffin worked at a location that exposed him to dangers posed by
the general public.

 Finally, in Padilla, the Supreme Court upheld the finding of noncompensability in
a claim brought by the widow of a deceased employee who had been murdered by an
unknown assailant while at the employer’s place of business. 324 S.W.3d at 509. The
business did not receive walk-in customers and the assailant did not take anything from
the business. Id. Additionally, even though the business operated in a high crime area, a
razor-wire fence surrounded the property and the business also had a burglar alarm. Id.
Based on these facts, the Supreme Court determined that the deceased’s employment did

 13
not expose that employee to the dangers posed by the general public; thus the street risk
doctrine did not warrant recovery by the widow. Id. at 513-14.

III. McDoogals must resume paying benefits to Mr. Griffin.

 The parties stipulated at the hearing that McDoogals would be required to pay
temporary disability and medical benefits to Mr. Griffin in the event the Court found that
the injury arose primarily out and in the course and scope of employment. Having found
that the injury did so arise, the Court finds that Mr. Griffin has shown that he will likely
prevail at a hearing on the merits, and now turns to the computation of benefits owed.

 Tennessee law requires an employer to provide “. . . free of charge to the
employee such medical and surgical treatment…made reasonably necessary by accident
as defined in this chapter[.]” Tenn. Code Ann. § 50-6-204(a)(1)(A) (2014). McDoogals
has continued to provide Mr. Griffin medical benefits despite its opposition to the claim.
McDoogals must continue to provide reasonable and necessary treatment.

 Concerning disability benefit payments, an employee is entitled to receive
temporary total disability (TTD) benefits pursuant to Tennessee Code Annotated section
50-6-207(1) whenever the employee has suffered a compensable, work-related injury that
has rendered the employee unable to work. See Simpson v. Satterfield, 564 S.W.2d 953
(Tenn. 1978). Entitlement to temporary total disability benefits ends whenever an
employee is able to return to work. Cleek v. Wal-Mart Stores, Inc., 19 S.W.3d 770, 776
(Tenn. 2000).

 Here, the parties stipulated that benefits would be due from the date McDoogals
terminated them, March 11, 2015, until Mr. Griffin reaches maximum medical
improvement or is released to return to work. The period from termination of TTD
benefits to the date of this order is fifteen (15) weeks and six(6) days. Using the
stipulated compensation rate of $289.02, McDoogals must pay Mr. Griffin $4,583.03 in
accrued temporary disability benefits. McDoogals must also continue making temporary
disability payments on a regular schedule pending his attainment of maximum medical
improvement or release to return to work.

 IT IS, THEREFORE, ORDERED as follows:

 1. McDoogals shall continue provide reasonable and necessary medical care to Mr.
 Griffin for injuries related to his September 27, 2014 workplace accident.

 2. The amount of temporary disability benefit is $289.02 per week based on
 Employee’s average weekly wage of $433.53.

 14
 3. Payment of past due benefits in the amount of $4,583.03 shall be made for the
 period from March 11 to July 2, 2015.

 4. McDoogals or its workers’ compensation insurance carrier shall continue to pay
 Mr. Griffin temporary disability benefits in regular intervals until he is no longer
 eligible for those benefits by reaching maximum medical improvement, by
 returning to work, or by release without restrictions by the authorized treating
 physician. McDoogals’ representative shall immediately notify the Division, Mr.
 Griffin and his counsel of its intent to terminate temporary disability benefits, and
 cite the basis for the termination, by filing Form C-26 and forwarding a copy to
 Mr. Griffin and his counsel.

 5. This matter is set for Initial Hearing on August 18, 2015, at 9:00 a.m. (CDT).

 6. Unless interlocutory appeal of the Expedited Hearing Order is filed,
 compliance with this Order must occur no later than seven (7) business days
 from the date of entry of this Order as required by Tennessee Code
 Annotated section 50-6-239(d)(3). The Insurer or Self-Insured Employer
 must submit confirmation of compliance with this Order to the Division by
 email to WCCompliance.Program@tn.gov no later than the seventh (7th)
 business day after entry of this Order. Failure to submit the necessary
 confirmation within the period of compliance may result in a penalty
 assessment for non-compliance.

 7. For questions regarding compliance, please contact the Workers’ Compensation
 Compliance Unit via email WCCompliance.Program@tn.gov or by calling (615)
 253-1471 or (615) 532-1309.

ENTERED ON THIS THE 2nd DAY OF JULY, 2015.

 _____________________________________
 Joshua Davis Baker
 Workers' Compensation Judge

 15
Initial Hearing:

 An Initial Hearing has been set with Judge Joshua Davis, Court of Workers’
Compensation Claims. You must call (615) 741-2113 or toll free at (855) 874-0474 to participate
in the Initial Hearing. Please Note: You must call in on the scheduled date/time to
participate. Failure to call in may result in a determination of the issues without your further
participation. All conferences are set using Central Time (CST).

Right to Appeal:

 Tennessee Law allows any party who disagrees with this Expedited Hearing Order to
appeal the decision to the Workers’ Compensation Appeals Board. To file a Notice of Appeal,
you must:

 1. Complete the enclosed form entitled: “Expedited Hearing Notice of Appeal.”

 2. File the completed form with the Court Clerk within seven (7) business days of the date
 the Expedited Hearing Order was entered by the Workers’ Compensation Judge.

 3. Serve a copy of the Request for Appeal upon the opposing party.

 4. The appealing party is responsible for payment of a filing fee in the amount of
 $75.00. Within ten (10) calendar days after the filing of a notice of appeal, payment must
 be received by check, money order, or credit card payment. Payments can be made in
 person at any Bureau office or by United States mail, hand-delivery, or other delivery
 service. In the alternative, the appealing party may file an Affidavit of Indigency, on a
 form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of
 Indigency may be filed contemporaneously with the Notice of Appeal or must be filed
 within ten (10) calendar days thereafter. The Appeals Board will consider the Affidavit
 of Indigency and issue an Order granting or denying the request for a waiver of the filing
 fee as soon thereafter as is practicable. Failure to timely pay the filing fee or file the
 Affidavit of Indigency in accordance with this section shall result in dismissal of the
 appeal.

 5. The parties, having the responsibility of ensuring a complete record on appeal, may
 request from the Court Clerk the audio recording of the hearing for the purpose of having
 a transcript prepared by a licensed court reporter and filing it with the Court Clerk within
 ten (10) calendar days of the filing of the Expedited Hearing Notice of
 Appeal. Alternatively, the parties may file a statement of the evidence within ten (10)
 calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of
 the evidence must be approved by the Judge before the record is submitted to the Clerk of
 the Appeals Board.

 6. If the appellant elects to file a position statement in support of the interlocutory appeal,
 the appealing party shall file such position statement with the Court Clerk within three (3)

 16
business days of the filing of the Expedited Hearing Notice of Appeal, specifying the
issues presented for review and including any argument in support thereof. If the
appellee elects to file a response in opposition to the interlocutory appeal, appellee shall
do so within three (3) business days of the filing of the appellant’s position statement.

 17
 CERTIFICATE OF SERVICE

 I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to
 the following recipients by the following methods of service on this the 2nd day of July, 2015.

Name Certified First Via Fax Via Email Address
 Mail Class Fax Number Email
 Mail
Cully Ward x cward@wtdlaw.net
Allen Callison x acallison@eraclides.com

 _____________________________________
 Penny Patterson-Shrum, Clerk
 Tennessee Court of Workers’ Compensation Claims
 WC.CourtClerk@tn.gov

 18